Filed 10/31/13 Russell v. Crawford CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| BRIAN L. RUSSELL,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>WENDY CRAWFORD et al.,<br><br>    Defendants and Respondents. | D062546<br><br><br><br>(Super. Ct. No. 37-2010-00150418-<br>PR-TR-NC) |

APPEAL from a judgment of the Superior Court of San Diego County, Richard G. Kline, Judge.  Affirmed.

Brian L. Russell, in pro. per, for Plaintiff and Appellant.

Miller, Monson, Peshel, Polacek & Hoshaw, Thomas M. Monson; McKenna Long & Aldridge, Mary F. Gillick and Catherine M. Swafford for Defendants and Respondents.

Plaintiff Brian Leslie Russell contested the 2005 will, 2010 trust, and 2010 will of his deceased father, Alfred Leslie (Les) Russell.  During the three-day trial, Brian's uncle,

Robert Russell,[1] testified on Brian's behalf regarding a videotaped and transcribed conversation that took place between Robert and Les at Scripps Hospital. The court granted an oral motion for judgment brought by Brian's sisters—defendants Wendy Crawford and Sharon Fitzsimons—who are the trustees of Les's 2010 trust, thereby denying Brian's 2010 will and trust contests and rendering his 2005 will contest moot.

After a bifurcated two-day hearing, the court found Brian lacked probable cause to bring the 2010 will and trust contests and revoked his $50,000 gift, which the court found was subject to offsets in the amount of the trustees' litigation expenses.

Brian appeals the judgment in propria persona, contending he did not receive a fair hearing because the court failed to provide accommodations pursuant to California Rules of Court,[2] rule 1.100 to Robert, who indicated at trial that he had "some difficulty hearing" as a result of a disability. We conclude this contention is unavailing because Robert's purported request for accommodation (discussed, *post*) failed to comply with the requirements of that rule. Accordingly, we affirm the judgment.

---

[1]     As Brian Russell, Les Russell, and Robert Russell all share the same last name, we shall refer to them by their first names in the interest of clarity and convenience. We intend no disrespect. At trial, Robert referred to his brother, Alfred Leslie Russell, as Les. Accordingly, we also shall refer to him as Les.

[2]     All further rule references are to the California Rules of Court.

FACTUAL AND PROCEDURAL BACKGROUND[3]

A. *Robert's Purported Request for Accommodation*

At the outset of his direct examination of Robert during Brian's case-in-chief, Brian's counsel asked Robert, "[Y]ou have some difficulty hearing; is that correct?" Robert replied, "Yes, I do." Brian's counsel then asked, "If you would be so kind, if you have any difficult[y] hearing what any of us says, please let us know right away. Okay?" Robert responded, "I will." The reporter's transcript of Robert's testimony shows that Brian's counsel then asked him a lengthy series of questions, and Robert gave appropriate responses.

Eventually, Robert indicated he had difficulty hearing a particular question and asked that it be repeated. In response, Brian's counsel said, "Could you tell us what your current disabilities are?" As pertinent here, Robert stated, "I have a profound loss in the upper frequency of my hearing."

Later, during cross-examination, Crawford's counsel read to Robert an excerpt from the transcript of his deposition testimony showing he had stated, "At no time was [Les] really able to communicate properly." Crawford's counsel then asked Robert whether he remembered making that statement during his deposition. In his response, Robert stated, "I never had proper communication with Les."

Crawford's counsel then played a videotape[4] of a conversation Robert had with Les in the hospital. She then asked Robert, "[W]as that the tape of . . . a conversation that

---

[3]  Due to the narrow focus of Brian's claim on appeal, the following summary of the pertinent background is brief.

you had with your brother . . . in the hospital?"  Robert replied, "Can you repeat that again, please?"  Crawford's counsel responded, "We just heard a tape of a conversation, was that conversation that you had with your brother in the hospital?"  Robert answered, "I don't remember that particular conversation.  I do remember another conversation."

Immediately thereafter, Robert said to Crawford's counsel, "I couldn't understand most of what was said here.  *You would have to give me a transcript because I . . . with my ears we're dealing with out-of-context hearing problems.  So I really would like a transcript and then somebody could read the words slowly to me, then I know what was said*."  (Italics added.) He added, "It's quite possible.  I recognized part of the topic, we were talking about Laurie buying a house.  I certainly recognize that story, that is a story that I could have told him.  That's quite possible."

The following colloquy then took place between Crawford's counsel and Robert:

"[Crawford's counsel]:  Do you recognize your brother Les's voice on that tape?

"[Robert]:  No, I don't.  His voice is very different to me, that's why I'm having difficulty.  Not what Les sounded like.  Now, he may— it's not what he sounds like to me.  He sounds very different.

"[Crawford's counsel]:  Do you recognize your voice on the tape?

"[Robert]:  Beg your pardon?

"[Crawford's counsel]:  Do you recognize your voice on that tape?

"[Robert]:  My voice?  I recognize my story.  Even my own voice doesn't sound the way I think it should sound, but *I recognize my story that I'm telling Les*."  (Italics added.)

---

4    The record shows the court reporter did not report the audio portion of the videotape.

4

B. *Court's Rulings*

The court set forth its rulings in the formal written judgment. The court granted the oral motion for judgment (Code Civ. Proc., § 631.8) brought by Crawford and Fitzsimons after Brian finished presenting his case-in-chief with respect to his 2010 trust and 2010 will contests, thereby denying those contests. Specifically, the court granted judgment against Brian and in favor of Crawford and Fitzsimons on Brian's undue influence claims, finding that neither Crawford nor Fitzsimons unduly influenced Les to execute the 2010 trust and 2010 will. The court also granted judgment against Brian and in favor of Crawford and Fitzsimons on Brian's claim that Les lacked mental and testamentary capacity, finding that Les "had the requisite mental and testamentary capacity to execute the Trust and the 2010 Will." In addition, the court granted judgment against Brian and in favor of Crawford and Fitzsimons on Brian's claim that Les could not communicate and did not understand the trust and 2010 will, finding that Les had the ability to communicate when he executed the trust and 2010 will, he understood the trust and will, and both the trust and will "accurately implemented [Les's] estate planning intentions." The court found the foregoing rulings rendered Brian's 2005 will contest moot.

In addition, the court found Brian lacked probable cause to bring the 2010 will and trust contests and revoked his $50,000 gift, which the court found was subject to offsets in the amount of the trustees' litigation expenses. Brian's pro per appeal followed.

5

DISCUSSION

Brian contends the judgment should be reversed, and this court should "rule [that Les] died intestate and the Estate [should] be equally divided among the parties or be allowed to be refiled [*sic*]" because the court failed to provide accommodations to Robert pursuant to rule 1.100 and, as a result, he (Brian) did not receive a fair hearing. We begin our analysis with an overview of the applicable legal framework set forth in rule 1.100.

A. *Rule 1.100*

Rule 1.100 "provides for the accommodation by the judicial system of persons with disabilities." (2 Witkin, Cal. Procedure (5th ed. 2008) Courts, § 32, p. 55.) Rule 1.100(b) states that "[i]t is the policy of the courts of this state to ensure that persons with disabilities have equal and full access to the judicial system."

For purposes of rule 1.100, the term "persons with disabilities" is defined as persons covered by Civil Code section 51 et seq. (the Unruh Civil Rights Act), the Americans With Disabilities Act of 1990 (ADA) (42 U.S.C. § 12101 et seq.) or "other applicable state and federal laws" and includes "persons who have a physical or mental impairment that limits one or more of the major life activities, have a record of such an impairment, or are regarded as having such an impairment." (Rule 1.100(a)(1); see 2 Witkin, Cal. Procedure, *supra*, Courts, § 32, pp. 55-56.)

The term "accommodations" is defined in rule 1.100 as "actions that result in court services, programs, or activities being readily accessible to and usable by persons with disabilities" and may include (a) making reasonable modifications in court policies, practices, and procedures; (b) furnishing auxiliary aids and services─such as equipment,

6

devices, material in alternative formats, interpreters, and readers—at no charge; and (c) relocating services or programs to accessible facilities or providing services at alternative sites. (Rule 1.100(a)(3); see 2 Witkin, Cal. Procedure, *supra*, Courts, § 32, p. 56.) Although alteration of existing facilities may be an accommodation, alteration is not required where other actions are effective in providing access. (*Ibid*.)

To fulfill the purpose of rule 1.100 of ensuring access to the courts for persons with disabilities, each court is required to designate at least one person to be the ADA coordinator to address accommodation requests. (Rule 1.100(b); see *In re Marriage of James & Christine C.* (2008) 158 Cal.App.4th 1261, 1273.)

An "applicant"—which is defined in rule 1.100(a)(2) as "any lawyer, party, witness, juror, or other person with an interest in attending any proceeding before any court of this state"—may present a request for accommodation ex parte to the court's ADA coordinator on a form approved by the Judicial Council, in another written format, or orally. (Rule 1.100(c)(1); *In re Marriage of James & Christine C.*, *supra*, 158 Cal.App.4th at p. 1273.)

The applicant's request for accommodation must comply with requirements specified in rule 1.100(c). The request must describe the accommodation sought and state the impairment necessitating the accommodation; and the court, in its discretion, may require additional information about the impairment. (Rule 1.100(c)(2).) Of particular importance here, the request for accommodation "must be made as far in advance as possible, and in any event must be made *no fewer than 5 court days before the*

7

*requested implementation date*." (Rule 1.100(c)(3), italics added.) The court has discretion to waive this requirement. (*Ibid*.)

If a request for accommodation is made, the grounds for denying the request are limited. (*In re Marriage of James & Christine C.*, *supra*, 158 Cal.App.4th at p. 1273.) "A request for accommodation may be denied only when the court determines that: [¶] (1) *The applicant has failed to satisfy the requirements of this rule*; [¶] (2) The requested accommodation would create an undue financial or administrative burden on the court; or [¶] (3) The requested accommodation would fundamentally alter the nature of the service, program, or activity." (Rule 1.100(f), italics added.)

B. *Analysis*

Brian claims that Robert made a request for accommodation within the meaning of rule 1.100 when, during Robert's cross-examination, Crawford's counsel played a videotape of a conversation Robert purportedly had with Les in the hospital, she asked Robert whether that videotape was "the tape of . . . a conversation that you had with your brother in the hospital?" and, shortly thereafter, Robert said, "You would have to give me a transcript because . . . with my ears we're dealing with out-of-context hearing problems. So I really would like a transcript and then somebody could read the words slowly to me, then I know what was said."

Although it is undisputed that Brian's counsel made no request for any accommodation on behalf of his witness Robert, we shall assume, without deciding, that Robert made an oral request for accommodation within the meaning of rule 1.100. Rule 1.100(a)(2) permits a witness like Robert to make a request for accommodation, and rule

8

1.100(c)(1) provides that such a request may be made orally and then forwarded to the court's designated ADA coordinator.

However, as already noted, the request for accommodation "must be made as far in advance as possible, and in any event must be made *no fewer than 5 court days before the requested implementation date*." (Rule 1.100(c)(3), italics added.) Here, Brian has not shown, and cannot demonstrate, compliance with this requirement. Robert made the assumed accommodation request during his trial testimony on direct examination, and Brian did not request a continuance to allow implementation of an accommodation at a later time.

Although the court has discretion to waive this time requirement (rule 1.100(c)(3)), it is undisputed that Brian did not request that the court waive it and nothing in the record indicates any such waiver. In any event, it is unlikely the court, in the exercise of its discretion, would have waived the time requirement in light of both Robert's demonstrated ability to understand and give appropriate responses to a lengthy series of questions during direct examination, and the fact that, after the videotape of his purported conversation with Les at the hospital was played during cross-examination, he acknowledged that he "recognize[ed] [his] story that [he was] telling Les."

A request for accommodation under rule 1.100 may be denied when the court determines that "[t]he applicant has failed to satisfy the requirements of this rule." (Rule 1.100(f).) Here, assuming Robert made such a request and the court somehow implicitly denied that request, the court's denial of the request was authorized under rule 1.100(f) because Brian has not shown, and cannot demonstrate, compliance with the requirement

9

set forth in rule 1.100(c)(3) that "[r]equests for accommodation must be made . . . no fewer than 5 court days before the requested implementation date."

We need not, and do not, reach the issues—raised by Crawford in her respondent's brief—of (1) whether the court's assumed denial of Robert's assumed request for accommodation is an appealable order;[5] (2) whether Brian forfeited his claim of error by raising it for the first time on appeal; and (3) whether he is estopped from raising his claim under the doctrine of invited error.

For all of the foregoing reasons, we conclude Brian's contention that the judgment should be reversed on the ground the court erroneously failed to provide accommodations to Robert pursuant to rule 1.100 is unavailing.  Accordingly, we affirm the judgment.

---

[5]    Witkin explains that "[w]here the determination is made by a judicial officer, the applicant or any participant may file a petition for a writ of mandamus in the appropriate appellate court within 10 days after the response is given or sent."  (2 Witkin, Cal. Procedure (2013 supp.) Courts, § 32, pp. 6-7, citing rule 1.100(g).)

10

DISPOSITION

The judgment is affirmed.  Crawford shall recover her costs on appeal.

NARES, Acting P. J.

WE CONCUR:

HALLER, J.

IRION, J.

11