Filed 4/30/14  Conservatorship of Tanaka CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| Conservatorship of the Person and Estate of JEAN MIHO TANAKA. | B239292 (Los Angeles County Super. Ct. No. BP117240) |
| JEANNIE TANAKA, Petitioner and Appellant, v. LINDA COTTERMAN, Objector and Respondent. | |

APPEAL from the orders of the Superior Court of Los Angeles, Reva Goetz, Judge. Affirmed.

Alison Minet Adams for Petitioner and Appellant.

Schomer Law Group, Scott P. Schomer and Megan Waugh for Objector and Respondent.

_____

Petitioner and appellant Jeannie Tanaka appeals from orders declaring her a vexatious litigant, denying part of her request for accommodations, confirming a temporary conservator's final account, and appointing a conservator for her mother Jean Miho Tanaka.[1] On appeal, Jeannie contends: (1) the vexatious litigant prefiling order pursuant to Probate Code section 1970 and Code of Civil Procedure section 391.7 must be vacated because she was represented by counsel at all times; (2) an order approving the final account of Carol White should be vacated; (3) letters of conservatorship issued to Linda Cotterman should be revoked; and (4) her request for accommodations was improperly denied in part.

The record on appeal is inadequate to review the issues presented. To the extent the record allows review, we hold as follows. A vexatious litigant determination under Probate Code section 1970 is not limited to filings made in propria persona. Jeannie has failed to show any error with respect to the approval of White's final account, and the trial court's appointment of Cotterman is supported by substantial evidence. Jeannie has not shown that the trial court erred by denying part of her second request for accommodations, and in any event, the denial had no impact on the appealable orders in this case. Therefore, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

Conservatee's three children are Christine Tanaka, Wesley Tanaka, and Jeannie. In June 2009, Christine and Wesley filed a petition to have a conservator appointed for their mother. In July 2009, Jeannie filed a competing petition to be appointed conservator. Jeannie is an attorney, but she was represented by counsel during the proceedings.

---

[1] Because several parties share the last name Tanaka, they will be referred to individually by their first names.

2

Carol White was appointed as temporary conservator. White resigned in May 2010, and Linda Cotterman was appointed as temporary conservator in June 2010. White filed a petition for a first and final account on December 17, 2010.

A trial was held on dates in February, March and April 2011, to determine the competing conservatorship petitions and the appropriate residence for the conservatee. On June 15, 2011, the trial court issued a lengthy and thorough tentative statement of decision containing the following findings. Cotterman took conservatee to her primary doctor for care on four occasions in 2010 and 2011. Jeannie requested conservatee continue care under this doctor and the trial court accommodated Jeannie's request. In addition, Cotterman took conservatee to see Dr. Cathie-Ann Lippman at Jeannie's request and in the presence of Jeannie and her attorney, to discuss supplements. Dr. Lippman recommended certain supplements, but had not seen conservatee for a while. Cotterman discussed the supplement recommendations with conservatee's primary doctor, who felt the supplements were not helpful or harmful, and therefore, were unnecessary.

Jeannie complained about her mother's dental health in 2009. Cotterman took conservatee to her dentist, Dr. Thomas Edwards, on five occasions. Although Jeannie had full control of conservatee's care until July 2009, conservatee had not seen Dr. Edwards since 2004.

The court concluded that Jeannie put her belief system and interests before those of conservatee. Several credible witnesses testified that Jeannie argued with the temporary conservators in front of conservatee. Although Jeannie denied that her mother became tired after Jeannie's longer visits, credible testimony from three caregivers supported finding that her mother was fatigued after these visits. Jeannie repeatedly violated court orders intended to protect conservatee. Jeannie's actions led the court to find her petitioning activity was more about the impact on her and not on the conservatee's best interests.

During the time Cotterman served as conservator, she retained people to clean the conservatee's home and ensure utilities were working, took conservatee for multiple medical visits, accommodated Jeannie's scheduled visits with and without a monitor,

3

supervised conservatee's caregivers, and navigated extreme conflict. The court found Cotterman acted in the best interest of the conservatee, and other than doing her job, had no interest in taking advantage of conservatee or furthering an agenda.

In conclusion, the court found Cotterman was suitable and qualified, and appointed Cotterman as conservator of the person and the estate of Jean. The court denied Jeannie's petition to be appointed conservator with prejudice. The court ordered that the temporary letters issued to Cotterman remain in effect until the court issued a final statement of decision, after which, depending on the final statement of decision, permanent letters would be issued. Jeannie filed objections to the tentative statement of decision.

It appears a trial was held on White's petition for final account on June 13, June 15, and July 6, 2011. White was represented by attorney Kathryn J. Black. No reporter's transcripts or minute orders for any of these dates have been included in the record on appeal.

Jeannie filed a request for accommodations on June 15, 2011. She requested an accommodator present in court, a transcript provided on the day of the hearing or the option to record hearings, and breaks as necessary. She attached her doctor's declaration that Jeannie was suffering from a stress disorder as a result of the litigation. The request was denied in whole or in part because it failed to satisfy the requirements of rule 1.100 of the California Rules of Court.[2] The written denial was signed by a person other than the trial court judge. On appeal, Jeannie refers to a discussion in the trial court on June 13, 2011, about her request for accommodations, but as noted above, no reporter's transcript has been included in the appellate record for that date.

On November 1, 2011, the trial court ruled on the competing petitions for appointment of a conservator, including Jeannie's objections to the June 15, 2011, tentative statement of decision. The court adopted the findings of the tentative statement of decision with minor modifications. On the same day, the trial court issued a lengthy

---

[2] All further citations to rules are to the California Rules of Court.

4

minute order approving White's final account and awarding conservator fees and costs of $27,131.05, attorney fees of $41,720.35, and costs of $547.09.

On November 7, 2011, Jeannie filed an ex parte motion to remove Cotterman as temporary conservator. The case summary reflects an opposition to the ex parte motion was filed the same day which has not been made part of the record on appeal. If there was an initial hearing on the ex parte motion, no reporter's transcript has been included in the record on appeal.

A hearing was held on November 18, 2011. The trial court stated, "I understand that this matter came in ex parte and that Judge Beckloff set the matter for further hearing for this afternoon. I have reviewed the emergency ex parte motion that was brought by [Jeannie's attorney] on November 7th. I've reviewed the opposition that was filed also November 7th by Ms. Creutz [the probate volunteer panel attorney appointed to represent the interests of the conservatee]." The trial court explained to Jeannie, "Mary Creutz is raising the issue that when you bring a petition for instructions which is unsuccessful, you can be deemed a vexatious litigant. I don't know if you and [your attorney] have had a chance to talk about that yet. Ms. Lodise [the attorney for Jeannie's siblings], in her opposition to your ex parte request, is asking to have you deemed a vexatious litigant . . . within the meaning of Probate Code section 1970." The trial court denied Jeannie's ex parte request and set the issue of whether Jeannie should be considered a vexatious litigant for hearing on December 19, 2011, with an order to show cause for contempt that had been previously scheduled.

On November 28, 2011, Jeannie's attorney Tracey Hom filed a declaration in opposition to the motion to declare Jeannie a vexatious litigant and in opposition to the order to show cause regarding contempt. Hom stated the motions filed in the case were necessary to bring issues concerning conservatee's care before the court.

With the court's permission, Jeannie filed additional objections to the statement of decision regarding appointment of a conservator. A hearing was held on these objections on December 2, 2011. No reporter's transcript or minute order for December 2, 2011, is part of the record on appeal. The court took matters raised at the hearing under

5

submission. On December 12, 2011, the trial court issued a minute order supplementing the November 1, 2011 order and ruling on Jeannie's further objections to the statement of decision.

Jeannie submitted a new request for accommodations on December 15, 2011, seeking four accommodations: (1) to record all court proceedings using her own recording device to assist with memory deficits; (2) frequent short breaks from the proceedings; (3) extra time to think without pressure from adversaries or the court, and possibly extended deadlines; and (4) protection from the false assertions and ridicule of her adversaries.

The trial court filed a written response on December 19, 2011, denying the request in part, because it failed to satisfy the requirements of rule 1.100, created an undue burden on the court, and fundamentally altered the nature of the service, program, or activity. The court agreed to provide an alternative accommodation for Jeannie, by allowing her the opportunity to organize her thoughts before answering questions and breaks as necessary.

Jeannie's attorney Robert Canny was present at the hearing on December 19, 2011. He informed the court that Jeannie was not ready to move forward with the order to show cause regarding contempt, because Robert Knecht, who was another attorney representing Jeannie, was in trial and unable to attend the hearing. On Knecht's behalf, he requested a continuance of the contempt issues. Canny was prepared to move forward on the vexatious litigant issues. The trial court asked whether Canny could represent Jeannie on the contempt issues, since he was assisting Knecht in the matter and knew the case better than Knecht. Canny insisted that Knecht was a skilled defense counsel for criminal matters, as opposed to his own specialty in civil real estate litigation.

Canny noted that the court had ruled on Jeannie's request for accommodations. He argued that the court was required to grant the request under federal law or it was subject to appeal by writ. Jeannie had told him she wanted a writ filed if the request for accommodations was denied. He noted that Jeannie was not present to confirm her directions, although he had expected her to appear. He argued that the court could not

6

proceed on any matters if the request for accommodations was denied. The trial court stated that the request for accommodations had procedural defects and offered to explain the basis for the denial. Canny objected that the request for accommodations was confidential. The other parties did not know the information in the request or the court's ruling on the request.

The trial court continued the contempt matter to January 24, 2012. The siblings' attorney explained that in her opposition to the ex parte motion to have Cotterman removed, she requested Jeannie be deemed a vexatious litigant. She believed Creutz had filed an application to have Jeannie deemed a vexatious litigant. Canny argued that a noticed motion was required and Code of Civil Procedure section 391.7 did not apply, because each of Jeannie's motions had been made through counsel. The siblings' attorney argued that the Probate Code provided broader grounds for the court to make a vexatious litigant determination, which could be on the court's own motion.

The trial court considered when the conservatorship was established for purposes of the Probate Code and whether the Probate Code section applied prior to the court's minute order issued on December 2, 2011, resolving the competing petitions for conservatorship. The court found Jeannie had notice based on the discussion at the prior hearing and continuance of the vexatious litigant issue.

The siblings' attorney argued that the temporary conservatorship satisfied the statute, but at the very latest, the conservatorship was established by the trial court's order of November 1, 2011, and Jeannie filed her ex parte motion to have the conservator removed following that order. Canny responded that the minute order establishing the conservatorship was made on December 2, 2011, which was a month after Jeannie's ex parte motion for removal. He also argued that the Probate Code provisions incorporated the provisions of Code of Civil Procedure section 391.

The court granted the request and deemed Jeannie a vexatious litigant, considering the totality of the circumstances and the express goal of the Legislature in enacting Probate Code section 1970. The court ordered that Jeannie needed to obtain permission to file further actions, whether in pro per or represented by counsel, and would need to

establish that the action was not for the purposes of harassing or upsetting the conservator or the conservatorship.

No minute order for December 19, 2011, is included in the record on appeal. In appellant's brief, she claims statements were made at the December 19, 2011 hearing about her request for accommodations which are not reflected in the reporter's transcript of the hearing. The court entered a prefiling order dated December 19, 2011, applicable to Jeannie as a vexatious litigant. The order was entered pursuant to a motion by Creutz and prohibits Jeannie from filing any new litigation in a California court in propria persona without approval of the presiding judge of the court in which the action is to be filed.

On December 21, 2011, the court entered an order approving the final account of the temporary conservator White. The court approved payment of attorney fees and costs to Kathryn Black totaling $42,267.44.

On January 19, 2012, the court issued letters of conservatorship to Cotterman over the person and the estate of Jean. Jeannie filed a timely notice of appeal on February 17, 2012, which stated that the appeal was being taken from the December 19, 2011 prefiling order,[3] the December 19, 2011 order denying part of her request for accommodations, the December 21, 2011 order approving White's final account, and the January 19, 2012 order issuing letters of conservatorship to Cotterman.

---

[3] A prefiling order against a vexatious litigant under Code of Civil Procedure section 391.7 is directly appealable under Code of Civil Procedure section 904.1, subdivision (a)(6), as an order granting an injunction. (*Luckett v. Panos* (2008) 161 Cal.App.4th 77, 89-90.)

8

**DISCUSSION**

**<u>Standard of Review</u>**

"On appeal, we must presume the trial court's judgment is correct. [Citation.] In service of that rule, we adopt all intendments and inferences to affirm the judgment or order unless the record expressly contradicts them. [Citation.]" (*Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 324 (*Nielsen*).)

"It is the burden of the party challenging a judgment on appeal to provide an adequate record to assess error. [Citation.] Thus, an appellant must not only present an analysis of the facts and legal authority on each point made, but must also support arguments with appropriate citations to the material facts in the record. If he fails to do so, the argument is forfeited. [Citation.]" (*Nielsen*, *supra*, 178 Cal.App.4th at p. 324.)

"The California Rules of Court provide an appellant with a choice of several types of records upon which to take an appeal. The choices include a reporter's transcript, a clerk's transcript, an agreed statement and a settled statement. (Cal. Rules of Court, rules 8.831, 8.832, 8.834, 8.836, 8.837.)" (*Nielsen*, *supra*, 178 Cal.App.4th at p. 324.)

"'A court exercises its discretion in determining whether a person is a vexatious litigant. [Citation.] We uphold the court's ruling if it is supported by substantial evidence. [Citations.] On appeal, we presume the order declaring a litigant vexatious is correct and imply findings necessary to support the judgment.' (*Bravo v. Ismaj* (2002) 99 Cal.App.4th 211, 219.) Questions of statutory interpretation, however, we review de novo. (*Ibid.*)" (*Holcomb v. U.S. Bank Nat. Assn* (2005) 129 Cal.App.4th 1494, 1498-1499.)

## Vexatious Litigant Determination

Jeannie contends that the prefiling order must be reversed because she was represented by counsel as to each motion at issue. The record on appeal is inadequate to allow meaningful review of this issue. The record does not include the motion filed by Creutz seeking the vexatious litigant determination, which was the basis for the written order, or the November 2011 opposition to the ex parte motion filed by Christine and Wesley, which requested a vexatious litigant determination as well. Therefore, this court cannot examine the grounds on which the order was sought and granted.

Even if the record were adequate, we would uphold the order. In enacting the vexatious litigation provisions of Probate Code section 1970, the Legislature expressly found "unwarranted petitions, applications, or motions other than discovery motions after a conservatorship has been established create an environment that can be harmful to the conservatee and are inconsistent with the goal of protecting the conservatee." (Prob. Code, § 1970, subd. (a).)

Probate Code section 1970, subdivision (b), provides a basis for finding a person to be a vexatious litigant separate from other statutory definitions: "Notwithstanding Section 391 of the Code of Civil Procedure, if a person other than the conservatee files a petition for termination of the conservatorship, or instruction to the conservator, that is unmeritorious or intended to harass or annoy the conservator, and the person has previously filed pleadings in the conservatorship proceedings that were unmeritorious or intended to harass or annoy the conservator, the petition shall be grounds for the court to determine that the person is a vexatious litigant for the purposes of Title 3A (commencing with Section 391) of Part 2 of the Code of Civil Procedure. For these purposes, the term 'new litigation' shall include petitions for visitation, termination of the conservatorship, or instruction to the conservator." (Prob. Code, § 1970, subd. (b).)

The basis for a vexatious litigant determination set forth in Probate Code section 1970 is not limited to litigation filed in propria persona, as it is under Code of Civil Procedure section 391. In comparison, Code of Civil Procedure section 391, subdivision

10

(b), defines a vexatious litigant as "a person who does any of the following: [¶] (1) In the immediately preceding seven-year period has commenced, prosecuted, or maintained in propria persona at least five litigations other than in a small claims court that have been (i) finally determined adversely to the person or (ii) unjustifiably permitted to remain pending at least two years without having been brought to trial or hearing. [¶] (2) After a litigation has been finally determined against the person, repeatedly relitigates or attempts to relitigate, in propria persona, either (i) the validity of the determination against the same defendant or defendants as to whom the litigation was finally determined or (ii) the cause of action, claim, controversy, or any of the issues of fact or law, determined or concluded by the final determination against the same defendant or defendants as to whom the litigation was finally determined. [¶] (3) In any litigation while acting in propria persona, repeatedly files unmeritorious motions, pleadings, or other papers, conducts unnecessary discovery, or engages in other tactics that are frivolous or solely intended to cause unnecessary delay. [¶] (4) Has previously been declared to be a vexatious litigant by any state or federal court of record in any action or proceeding based upon the same or substantially similar facts, transaction, or occurrence."

Probate Code section 1970 provides a separate basis for finding a person to be a vexatious litigant, notwithstanding the definition provided in Code of Civil Procedure section 391. Probate Code section 1970 does not limit the reach of the statute to persons who file pleadings in propria persona. The Legislature was aware of the provisions of the Code of Civil Procedure and chose not to provide a similar limitation in the Probate Code provisions.

We conclude the trial court correctly interpreted Probate Code section 1970 to apply to pleadings filed by a person who was represented by counsel. We note that the prefiling order is limited to new litigation Jeannie files in propria persona. (Code of Civ. Proc., § 391.7.)

11

**Final Account**

Jeannie contends that the order approving White's final account should be reversed. However, Jeannie has not included any of the reporter's transcripts from the trial on these issues. The record is inadequate to review issues concerning the trial court's findings on the final account.

In addition, Jeannie has not supported her contentions through meaningful argument and citation to the record. She states that prior to the trial on the accounting issues, she objected to items in White's account and the amount of compensation claimed. She also notes that she filed objections to the statement of decision amounting to $7,000. However, she does not explain her objections or cite any evidence in the record to support her contentions. Jeannie has failed to meet her burden to show that the trial court committed prejudicial error.

**Appointment of Linda Cotterman**

Jeannie contends letters of conservatorship should not have been issued to Cotterman, because her actions are hostile and punitive toward Jeannie, she has placed caregiver comfort over the conservatee's interests, and she is not properly managing the conservatee's repeated health issues. The record does not contain a reporter's transcript of the December 2, 2011 hearing on Jeannie's objections to the trial court's findings. Therefore, the record is incomplete and inadequate for review.

Even if we found the record adequate, there is ample evidence to support the trial court's findings that Cotterman is a suitable and appropriate conservator for conservatee. She took conservatee to multiple doctor and dentist appointments. She has not refused any treatment for conservatee. She arranged for consistent caregivers and maintenance of conservatee's assets to the extent that funds allowed. She has navigated her duties under pressure from competing interests of the conservatee's relations. The trial court's findings are supported by substantial evidence.

12

**Request for Accommodations**

Jeannie filed a request for accommodations on December 15, 2011, which the trial court granted in part and denied in part on December 19, 2011. The record appears to be inadequate to review the trial court's ruling, because appellant refers to oral statements in her opening brief made by the trial court in ruling on the request for accommodations which are not reflected in the reporter's transcript provided on appeal.

Even were we to find the record adequate, we would conclude appellant has failed to demonstrate error. Rule 1.100 (b) provides persons with disabilities full and equal access to the judicial system. A party may present a written or oral request for accommodation, which must be forwarded to the court's ADA (Americans with Disability Act of 1990; 42 U.S.C. § 12101, et seq.) coordinator within the specified time frame. (Rule 1.100 (c)(1).) The applicant must describe the accommodation requested and state the impairment necessitating the accommodation. (*Id.* at (c)(2).) The request must be made as far in advance as possible, but no fewer than five court days in advance of the need for accommodation, although the court may exercise its discretion to waive this requirement. (*Id.* at (c)(3).) The court must inform the applicant in writing whether the request is granted or denied, in whole or in part, or an alternative accommodation is granted. (*Id.* at (e)(2)(A).) A request may be denied for only three reasons: the applicant failed to satisfy the requirements, the requested accommodation would "create an undue financial or administrative burden," or the requested accommodation would "fundamentally alter the nature of the service, program, or activity." (*Id.* at (f).)

If the request for accommodation is denied by nonjudicial court personnel, the applicant may submit a written request for review of the determination to the presiding judge or designated judicial officer within 10 days of the date the response was delivered or sent. (Rule 1.100(g)(1).) A determination made by a judicial officer is reviewable by filing a petition for a writ of mandate in the appropriate court within 10 days after the response was delivered or sent. (*Id.* at (g)(2).) Jeannie did not file a petition for review

13

by writ of mandate, but contends that she can raise an error in denying her request for accommodation in connection with the appeal of subsequent orders. (*In re Marriage of James M.C. & Christine J.C.* (2008) 158 Cal.App.4th 1261 [merits of accommodation request considered in conjunction with appeal from judgment].)

If a request for accommodations is erroneously denied, appellant may not need to demonstrate prejudice as a result. "From as far back as 1872, a fundamental precept in California is that in civil cases only prejudicial error is reversible. (Code Civ. Proc., § 475. See Cal. Const., art. VI, § 13.) Nevertheless, some errors in civil cases remain reversible per se, primarily when the error calls into question the very fairness of the trial or hearing itself. (See 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 456, pp. 511–513.) The sole published decision to interpret rule 1.100 suggests that wrongful denial of an accommodation is structural error that does not require prejudice for reversal." (*Biscaro v. Stern* (2010) 181 Cal.App.4th 702, 709, referring to *In re Marriage of James M.C. & Christine J.C., supra,* 158 Cal.App.4th 1261.) "The appellate court's dispensing with analysis of prejudice indicates wrongful denial of an accommodation is structural error infecting a legal proceeding's reliability, which stands to reason because an accommodation's purpose is to help a party meaningfully participate in a way that enhances our confidence in a proceeding's outcome. Unlike most legal error, structural error calls for reversal per se because the error prevents a reviewing court from ascertaining what might have happened absent the error. [Citation.]" (*Biscaro v. Stern*, *supra*, at p. 710.)

In this case, the trial court denied Jeannie's request for accommodations because it did not meet the requirements. Jeannie filed the request on Thursday, December 15, 2011, which was less than five court days before the hearing scheduled for Monday, December 19, 2011. Therefore, the request for accommodations was properly denied under the rule.

We note that unlike *In re Marriage of James M.C. & Christine J.C.*, *supra*, 158 Cal.App.4th 1261, the denial of accommodations in this case is unrelated to the appealable orders. Jeannie's ability to meaningfully participate in the proceedings was

14

not affected by the partial denial of her request for accommodations. She did not appear at the December 19, 2011 hearing, so the denial of part of her request did not have any impact on her ability to participate at that hearing. No further hearings were held on the issues before the trial court entered its orders approving White's final account and issuing letters of conservatorship to Cotterman. Therefore, the denial of accommodations had no impact on Jeannie's ability to participate with respect to those matters.

In her brief on appeal, Jeannie raises issues concerning the denial of her June 15, 2011 request for accommodations. She did not list the June 15, 2011 order in her notice of appeal. The June 15, 2011 determination was signed by someone other than the trial court. If nonjudicial court personnel denied the request for accommodation, rule 1.100 (g), provided for a right to appeal the determination to the presiding judge or designated judicial officer. We also note Jeannie has failed to demonstrate that her June 15, 2011 request for accommodations met the requirements of rule 1.100.

## DISPOSITION

The prefiling order, the order approving the final account of Carol White, and the order issuing letters of conservatorship to Linda Cotterman are affirmed. Linda Cotterman is awarded her costs on appeal.


      KRIEGLER, J.


We concur:


      TURNER, P.J.                      MOSK, J.