[No. G037159. Fourth Dist., Div. Three. Jan. 15, 2008.]

In re the Marriage of JAMES and CHRISTINE C.
JAMES C., Respondent, v.
CHRISTINE C., Appellant.

## Counsel

Trope and Trope, Thomas Paine Dunlap, Brian P. Lepak; Snell & Wilmer and Richard A. Derevan for Appellant.

Honey Kessler Amado for Respondent.

## Opinion

**FYBEL, J.—**

### I.

### Introduction

Christine C.[1] appeals from the judgment entered on James C.'s petition for dissolution of marriage. Christine suffers from bipolar disorder and breast cancer. She was representing herself in propria persona and was hospitalized when the trial court denied her request under the Americans with Disabilities Act of 1990, 42 United States Code section 12101 et seq. (ADA) and California Rules of Court, rule 1.100 to continue the trial. The trial was concluded in her absence. Christine contends the trial court erred by denying her ADA request.

Although we sympathize with the trial court's frustration over the many continuances granted in this case, including a prior unopposed ADA request

---

[1] We use the parties' first names to avoid confusion, not out of disrespect. As agreed by counsel at oral argument, we use throughout this opinion only the first letter of the parties' last name to preserve confidentiality required under California Rules of Court, rule 1.100(c)(4).

from Christine, we conclude her request for ADA accommodation under California Rules of Court, rule 1.100 should have been granted. It is undisputed Christine suffers from bipolar disorder, a potentially incapacitating mental illness, and, on her psychiatrist's recommendation, checked herself into a hospital the day before trial was set to resume. Rule 1.100(f) permits a trial court to deny a request for accommodation under the ADA only if the court makes a determination of at least one of three specifically identified grounds.[2] None of those grounds existed when Christine's request was denied. We therefore reverse and remand without addressing Christine's challenge to the judgment on its merits.

## II.

### FACTS

A. *Background*

Christine and James were married on February 10, 1989. They separated on May 6, 2004, and James filed a petition for dissolution of marriage on May 13, 2004. The case was assigned to Judge Silbar.

Christine and James have one child from their marriage. Christine also has an adult son from a prior marriage.

James is a physician. In 1996, he formed a business that performs medical review for health care payers, such as health insurance companies. James and Christine's 2002 federal income tax return reflected gross income of $707,042 and adjusted gross income of $644,918.

In an order to show cause filed May 17, 2004, Christine disclosed she suffered from bipolar disorder and breast cancer. Six weeks earlier, she had undergone a hysterectomy after the discovery of cancerous tumors.

An order filed June 2, 2004, approved a stipulation resolving issues of temporary child custody and visitation, and temporary child and spousal support. The order granted Christine monthly spousal support of $5,500. On November 19, 2004, the court granted the parties a judgment of dissolution as to status only, reserving jurisdiction over all other issues. The issues to be resolved at trial included permanent child and spousal support, valuation of

---

[2] The three permissible grounds for denying an ADA accommodation request are (1) the applicant failed to satisfy the requirements of California Rules of Court, rule 1.100; (2) the requested accommodation "would create an undue financial or administrative burden on the court"; and (3) the requested accommodation "would fundamentally alter the nature of the service, program, or activity." (Cal. Rules of Court, rule 1.100(f).)

James's business, valuation of the family residence, and Christine's contention James had concealed over $1 million during their marriage.

On March 9, 2005, the court scheduled the trial for August 2, 3, and 4, 2005. On June 22, 2005, the court appointed counsel to represent James and Christine's child.

### B. *Christine's First ADA Request*

On July 27, 2005, Christine applied ex parte for an order continuing the trial due to her psychiatric condition. Christine's treating psychiatrist, Kathleen Farinacci, M.D., submitted a declaration confirming that Christine had suffered from bipolar disorder for "a number of years." Dr. Farinacci further declared: "The divorce proceedings and upcoming trial have been a source of serious anxiety and emotional turmoil for Christine C[.] and I am afraid that she may suffer a mental and emotional breakdown as a result of the pressures of trial. As a result, I do not believe that she is capable to prepare for trial at this time. [¶] . . . I believe that if the trial were delayed for 90 days that Christine C[.] would be in better psychological and emotional shape to deal with the trial and would be less at risk of a breakdown."

The court denied Christine's ex parte application but stated, "[i]f you advise the court in the middle of the trial there is an emergency, I'll certainly respond to it." The court then commented, "I don't think I have any evidence to indicate that she would be institutionalized for 10 years if we started trial." The court decided to try valuation and property issues before custody and support issues.

On July 29, 2005, Christine filed an exhibit list and a witness list, which included a business appraiser and a forensic accountant. On the same date, the parties filed their respective trial briefs. In her trial brief, Christine again explained she suffered from bipolar disorder and two forms of cancer.

Trial started on August 2, 2005. Christine was present in a wheelchair, and her attorney stated she was ill. On the first day of trial, James testified and presented expert testimony and evidence concerning the valuation of his business. On the second day of trial (Aug. 3), James presented expert testimony and evidence on the value of the family residence. Christine was not present on August 3.

At 11:11 a.m. on August 3, the court recessed and conducted an in-chambers conference with counsel. In the meantime, Christine filed a request for accommodations by persons with disabilities (the ADA Request). She filed the request with Assistant Presiding Judge Wieben Stock, the ADA

coordinator, who notified Judge Silbar of the request. Judge Silbar conducted a telephonic examination of Dr. Farinacci, asking her if Christine would be "fine" for trial in 90 days. Dr. Farinacci was placed under oath and testified: "[F]ine would be an exaggeration, but right now she has been a wreck. I mean . . . very depressed and crying all the time and really overwhelmed by everything that is happening to the point that . . . we were discussing hospitalization for her. [¶] And following my last visit with her I called the hospital where she'd been before to see if that could be arranged." Dr. Farinacci testified Christine's mental disorders were "lifelong conditions" but "a little bit of time passing where she comes to grips with the various things that she has found out will allow her to be able to deal with the whole situation and go to trial." Dr. Farinacci confirmed that Christine suffered from bipolar disorder, "and what that means is her mood is unstable and sometimes she is much more manic and sometimes she's depressed."

After a brief recess, the court announced that after a thorough discussion, the court and counsel agreed it would not be in either party's best interest to proceed with trial while the ADA Request was pending. In light of Dr. Farinacci's testimony, the court continued the trial to November 29, 2005, and set a settlement conference for September 20. The court minutes for August 3 included this statement: "For the record, [the] court feels this matter should have proceeded to trial. Historically, the court was not made aware of [Christine]'s mental illness. This court had not seen [Christine] in a wheel-chair until yesterday. The trial continuance is to benefit both sides."

After being informed by Judge Silbar of the trial continuance, Assistant Presiding Judge Wieben Stock granted the ADA Request, stating: "Given the nature of this accommodation, that it is a temporary accommodation relating to the timing and pace of the trial as it was set to occur this week, [Christine] is advised that, consistent with her rights to confidentiality in this matter, she should be prepared to make available to the trial [c]ourt, any updated medical or psychiatric status information, including, if appropriate, the ability to consult with any treating professionals, so that the Court can monitor and make appropriate adjustments, if necessary, relative to future trial/hearing settings."

C. *Further Trial Continuance and Motion to Appoint Guardian ad Litem*

In early September 2005, Christine underwent surgery to remove a cancerous tumor from her left armpit. Her surgeon described the tumor as a "serious malignancy" and "showed that her non-Hodgkin's lymphoma had spread to parts of her body beyond that at the time of her original diagnosis."

Later in September, Christine filed an order to show cause asking the court to order James to pay her $72,000 he owed on a promissory note and to

liquidate some community property securities so she could receive an advance of community funds. In support of the order to show cause, Christine declared she was "badly in need of additional funds because my financial condition has seriously deteriorated." The trial court denied the order to show cause.

On November 10, 2005, Christine requested a continuance of the trial, scheduled for November 29. Christine's oncologist submitted a declaration concluding Christine was not fit for trial on that date. The oncologist explained: "[Christine] has a very complicated medical history of breast cancer and non-Hodgkin's lymphoma. She has recently been diagnosed with recurrent non-Hodgkin's lymphoma. She has been quite stressed with those recent findings. She is also quite fatigued which is part of the disease state. [¶] . . . At this point a great deal of work needs to be done to determine the extent of the recurrent lymphoma. Imaging studies and a bone marrow exam have been done. I have been contacting other experts in the field of bone marrow transplantation to determine the extent of aggressive therapy needed." Dr. Farinacci submitted a declaration concluding Christine was not fit for trial on November 29 because "[t]he stress of this recurring cancer has worsened [her] psychological condition."

James did not object to the request, and the trial court continued the trial to March 1 and 2, 2006.

In December 2005, James moved for an order appointing a guardian ad litem for Christine. His attorney's declaration asserted a guardian ad litem was necessary "because it has become apparent this dissolution action is unlikely to be completed in a timely manner as a result of [Christine]'s ongoing disability." Christine was unable to pay her attorney, the attorney withdrew, and Christine opposed the motion in propria persona. Dr. Farinacci submitted a declaration reaffirming Christine suffered from bipolar disorder, but was "currently on a pharmaceutical regimen under my medical supervision that has controlled the mood swings and compulsivity that are characteristic of this genetic disorder." According to Dr. Farinacci, Christine was "well stabilized" emotionally, fully competent mentally, capable of providing for her personal needs, and able to manage her financial resources. Dr. Farinacci suggested Christine undergo an Evidence Code section 730 evaluation to "answer any issues of mental capacity or stability."

On January 31, 2006, the trial court denied James's motion to appoint a guardian ad litem, stating, "I do not think that I can make the findings by clear and convincing evidence that I am required to make in order to appoint a guardian ad litem or a conservator." The court mentioned Christine's prior requests for a continuance, noted the trial had been set for March 2006 "for

many months," and then told Christine, "so I expect you are not going to come in March, asking for a continuance; is that correct?" Christine (who did not have counsel) replied, "[n]o, I won't go ask you for a continuance."

### D. *Christine's Second ADA Request*

On February 27, 2006, Christine filed an ex parte request for an ADA accommodation to continue the trial (the Second ADA Request). The Second ADA Request was personally served on Presiding Judge Wieben Stock, the court's ADA coordinator, and on Judge Silbar. Accompanying the Second ADA Request was a declaration from Dr. Farinacci stating: "[Christine] is currently in a totally depleted state emotionally and I am strongly recommending that she be hospitalized early the week of February 27, 2006 at a local psychiatric facility and hospital. While she is hospitalized, my professional medical opinion is that she be granted absolute rest from any further legal stress. The duration of her hospitalization will be determined by staff psychiatrists and physicians. I estimate that with proper care, she will be able to resume normal activities within three months."

Christine was not present when trial resumed on March 1, 2006. On February 28, 2006, she had checked herself into a hospital on Dr. Farinacci's recommendation. Christine was admitted by Dr. Eric Speare and was under his care through March 4, 2006, when—against Dr. Speare's advice—she checked herself out of the hospital. She did so because the behavioral health unit mixed alcohol and drug patients with psychiatric patients, making the atmosphere seem "turbulent and oppressive."

Christine's friend, Daniel Remy (who is not a lawyer), was in Judge Silbar's courtroom on March 1. He told Judge Silbar that Christine had been hospitalized and that an ADA request was pending before Presiding Judge Wieben Stock. Judge Silbar said she would contact Presiding Judge Wieben Stock to learn if a request was pending. Judge Silbar returned after a recess and announced, "[t]he court does not have any paperwork from any other court, whether it be the Court of Appeal, whether it be the presiding judge, that would indicate the court shouldn't proceed on this trial date, which appears to be our third or fourth trial date."

Remy then went to see Presiding Judge Wieben Stock and met with her for an hour. In a declaration submitted with Christine's motion for a new trial, Remy stated that Presiding Judge Wieben Stock told him she needed written proof that Christine had been hospitalized and would stop the trial if he could present " 'anything' " to show Christine was in the hospital. Presiding Judge Wieben Stock gave Remy her personal fax number so he could directly send her evidence of Christine's hospitalization. Remy contacted Dr. Speare, who

stated he would send a note on his prescription pad to Presiding Judge Wieben Stock. Later that day, Dr. Speare told Remy that by 2:00 p.m. he had faxed a note to Presiding Judge Wieben Stock confirming Christine had been hospitalized. Remy, believing the trial would be continued, went home.

Presiding Judge Wieben Stock denied the request to continue the trial, stating: "On March 1, 2006 this Court met with Mr. Daniel P. Remy, personal representative for moving party Christine C[.] This Court instructed Mr. Remy to provide any available evidence of Ms. C[.]'s current status to the trial judge in this matter as soon as possible. A determination whether to grant a continuance in the middle of an ongoing and complex trial involves the necessary weighing and balancing of a variety of factors, not otherwise known to this Court. [¶] For example, a review of the court record in this case, reveals that the declarant on the current ADA request, Dr. Kathleen Farinacci, M.D. submitted a prior declaration on or about January 23, 2006 declaring that Ms. C[.] 'is now well stabilized emotionally . . . [.]' Dr. Farinacci further declared that Ms. C[.] is 'not severely physically incapacitated by any illness at this time.' [¶] As of the day of the scheduled trial resumption, Ms. C[.] had not provided the trial judge with any evidence of her then-existing condition. It is this Court's understanding that Ms. C[.] has been hospitalized and at this Court's request, a later-faxed note from Dr. Eric Speare, M.D. states only that Ms. C[.] has been hospitalized and was admitted the night before March 1, 2006. [¶] Under the unique circumstances of this case, the Court finds that to grant Ms. C[.] a second mid-trial continuance, ex parte and without sufficient medical evidence, would fundamentally alter the nature of the service program or activity, within the meaning of the ADA, insofar as it would . . . inappropriately countermand the discretion and duties of the trial judge in the matter, who is otherwise fully qualified to consider Ms. C[.]'s reasonable requests, in an appropriate manner."

Judge Silbar learned Christine had made the Second ADA Request to Presiding Judge Wieben Stock, but proceeded with trial before a ruling was made on that request. Judge Silbar stated Christine "has failed to do anything that would mandate or even require this court to consider another continuance" and added the court had shown "patience by entertaining the C[.] matter 29 times." Although Presiding Judge Wieben Stock and Judge Silbar conversed about the Second ADA Request, it appears Judge Silbar was never informed of Dr. Speare's note confirming Christine had been hospitalized. Judge Silbar stated: "[E]ven though Ms. C[.] is not present, the court intends to be as fair as possible to her in all of these issues. We are not here to railroad her because she is not here."

Judge Silbar approved with a few additions the stipulation regarding temporary child custody and visitation as the permanent custody and visitation order, ordered James to pay monthly spousal support of $4,000 based on his offer to pay that amount, and ordered Christine to pay James $25,000 in attorney fees, to be deducted from her share of a brokerage account. Judge Silbar assigned a community property value of $557,000 to James's business. (In contrast, Christine's business valuator would have testified the business was worth $1.4 million.) James was awarded an equity interest credit of $182,077 in the family residence, which Christine contended was overvalued by $100,000.

### E. *Christine's Motion for a New Trial*

The judgment of dissolution with an addendum on reserved issues was entered on March 10, 2006. Christine obtained counsel, and they brought a motion to vacate the judgment and for a new trial. The motion included declarations from Christine, Remy, Dr. Farinacci, and Dr. Speare confirming Christine was hospitalized on March 1. Dr. Speare declared, among other things, he believed Christine "would not have been able to participate in trial given her medical condition on March 1, 200[6]" and described her as "physically incapacitated and unable to function, as she was rambling, distressed and hyperverbal."

In ruling on Christine's motion for a new trial, Judge Silbar recounted—over nine pages of the reporter's transcript—the procedural history of the case, emphasizing the many continuances. The parties had stipulated to some of the continuances, and the origin of one was unknown. Although recognizing that "most ADA accommodation requests are confidential," Judge Silbar found that Christine "waived that confidentiality by bringing the issue up on numerous occasions." Indeed, Judge Silbar criticized Christine for going to Presiding Judge Wieben Stock with a request for an ADA accommodation "without the court's knowledge," even though Presiding Judge Wieben Stock was the ADA coordinator. Judge Silbar referred to Remy as a man "whose name has been thrown around in this matter numerous times," and commented that he had spoken up "on numerous occasions" and had sought "another accommodation" from Presiding Judge Wieben Stock. Judge Silbar accused Dr. Farinacci ("[t]he psychologist or psychiatrist or whatever her title is") of "submitting under oath competing statements to two different courts regarding the mental state of [Christine]" and found her testimony to "completely lack credibility. Completely."

Judge Silbar denied the motion with these strong words: "This is absurd, absolutely absurd. Two-and-a-half years, 30 to 35 appearances on a very simple dissolution is unacceptable, costly, and inexcusable. [¶] The court

finds that the tactics by Ms. C[.] were manipulations to obtain continuances. The court made that finding when I proceeded on March 1st, 2006. [¶] After numerous attempts for continuances that were denied, after numerous requests for continuances that were granted, I get an informal statement that she checked herself into a hospital the night before trial resumes. [¶] Unacceptable. There is no surprise to Ms. C[.] [¶] The court finds by a preponderance of the evidence there is no irregularity in the proceedings resulting in an unjust, unfair result to Ms. C[.] Ms. C[.] has attempted to, by using two courtrooms, to manipulate the system." Judge Silbar also stated: "Let the Court of Appeal look at the record and let the Court of Appeal understand that we cannot—if we allowed every case to continue for two-and-a-half years, we wouldn't get anything done."

### III.

### The Trial Court Erred by Denying the Second ADA Request Under California Rules of Court, Rule 1.100 for a Trial Continuance

Did the trial court err by denying the Second ADA Request for accommodation? In her reply brief, Christine argues California Rules of Court, rule 1.100 virtually compelled Presiding Judge Wieben Stock to grant a trial continuance as an ADA accommodation. In response to our invitation, James submitted a supplemental brief in response to issues raised for the first time in the reply brief arguing, among other things, the trial court did not abuse its discretion by denying the Second ADA Request.[3]

#### A. *California Rules of Court, Rule 1.100*

■ California Rules of Court, rule 1.100 governs requests for accommodations by persons with disabilities. Rule 1.100(a) defines "persons with disabilities" to mean persons covered by Civil Code section 51 et seq. (the Unruh Civil Rights Act), the ADA, or other applicable state or federal law.

California Rules of Court, rule 1.100 advances the court policy "to ensure that persons with disabilities have equal and full access to the judicial system." (Cal. Rules of Court, rule 1.100(b).) To fulfill that purpose, rule 1.100(b) requires each superior court and appellate court to designate at least one person to be the ADA coordinator to address requests for accommodations. Rule 1.100(c) permits requests for accommodations to be made ex parte

---

[3] James moved to strike portions of Christine's reply brief on the ground it raised issues not raised in her opening brief. Because we invited James to file a supplemental brief to address those issues, we deny his motion to strike.

to the ADA coordinator, but requires they be made "as far in advance as possible, and in any event must be made no fewer than 5 court days before the requested implementation date." The court has discretion to waive this deadline. (*Id.*, rule 1.100(c)(1), (3).) The court must keep confidential all of the applicant's information concerning the request unless the applicant waives confidentiality in writing or disclosure is required by law. (*Id.*, rule 1.100(c)(4).)

■ California Rules of Court, rule 1.100(a)(3) defines "accommodations" to mean "actions that result in court services, programs, or activities being readily accessible to and usable by persons with disabilities" and may include "making reasonable modifications in policies, practices, and procedures; furnishing, at no charge, to persons with disabilities, auxiliary aids and services, equipment, devices, materials in alternative formats, readers, or certified interpreters for persons with hearing impairments; relocating services or programs to accessible facilities; or providing services at alternative sites." In responding to a request for accommodation under rule 1.100, the court "must consider, but is not limited by, California Civil Code section 51 et seq., the provisions of the Americans With Disabilities Act of 1990, and other applicable state and federal laws in determining whether to provide an accommodation or an appropriate alternative accommodation." (Cal. Rules of Court, rule 1.100(e)(1).)

■ The grounds for denying a request for accommodation are limited: "A request for accommodation may be denied only when the court determines that: [¶] (1) The applicant has failed to satisfy the requirements of this rule; [¶] (2) The requested accommodation would create an undue financial or administrative burden on the court; or [¶] (3) The requested accommodation would fundamentally alter the nature of the service, program, or activity." (Cal. Rules of Court, rule 1.100(f).)

B. *Christine Came Within the ADA and Followed the Procedures Under California Rules of Court, Rule 1.100 for Requesting an Accommodation*

■ It was undisputed Christine suffered from bipolar disorder, a potentially incapacitating mental illness which may result in disability under the ADA.[4] (*Den Hartog v. Wasatch Academy* (10th Cir. 1997) 129 F.3d 1076, 1081 [bipolar disorder of sufficient severity is a disability under the ADA].) In his supplemental brief, James assumes Christine qualifies as having a

---

[4] California Rules of Court, rule 1.100(a)(3) does not expressly include a trial continuance as an accommodation. Rule 1.100(a)(3) is not an exhaustive list, and James does not assert an accommodation cannot include a trial continuance. We conclude an accommodation under rule 1.100(a)(3) includes, under the appropriate circumstances, a trial continuance.

mental impairment that substantially limits one or more of her major life activities and is, therefore, disabled under the ADA. (See 42 U.S.C. § 12102(2)(A).) In addition, Christine suffered from breast cancer and a non-Hodgkin's lymphoma.

Christine followed the procedures for seeking an ADA accommodation. On February 27, 2006, Christine had the Second ADA Request personally served on Presiding Judge Wieben Stock and on Judge Silbar. Christine was hospitalized on February 28, 2006, and the next day her friend, Remy, made another request for an ADA accommodation in the form of a trial continuance. The Second ADA Request was filed fewer than five court days before the date set for trial to resume, but the trial court apparently waived the deadline under California Rules of Court, rule 1.100(c)(3), and James does not argue the Second ADA Request was untimely.

██ In considering the Second ADA Request, Presiding Judge Wieben Stock was required to consider the provisions of the ADA. Relevant here is title II of the ADA (42 U.S.C. §§ 12131–12165) concerning provision of public services. Title 42 United States Code section 12132 states, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." Under section 12131(1), a state and its departments and agencies are defined as public entities. Christine, acting on her psychiatrist's recommendation, checked herself into a hospital on February 28, 2006, as a result of her mental illness. In the order denying the Second ADA Request, Presiding Judge Wieben Stock acknowledged receiving a faxed note from Dr. Speare stating Christine had been hospitalized.

As Christine was representing herself in propria persona, she was unrepresented at trial on March 1. Thus, by reason of her disability, Christine would be denied the benefit of court services unless the trial court granted the Second ADA Request.

C. *None of the Three Grounds Listed in California Rules of Court, Rule 1.100(f) Required to Deny an ADA Request Was Present*

The trial court could deny the Second ADA Request only by making a determination of one of the three grounds listed in California Rules of Court, rule 1.100(f). If the court did not, or could not, make any such determination, the court *had no choice* but to grant Christine's request for an accommodation.

Under California Rules of Court, rule 1.100(f)(1), a trial court may deny an ADA accommodation request when the court determines "[t]he applicant has

failed to satisfy the requirements of this rule . . . ." In denying the Second ADA Request, Presiding Judge Wieben Stock stated, "Ms. C[.] had not provided the trial judge with any evidence of her then-existing condition." But in the Second ADA Request, filed on February 27, 2006, Christine described her total physical depletion and mental fatigue requiring an in-hospital stay and daily medicinal and psychiatric treatment. Dr. Farinacci submitted a supporting declaration stating she "strongly recommend[ed]" that Christine be hospitalized. In several previous filings, Christine had explained in detail she suffered from bipolar disorder and breast cancer. By midafternoon on March 1, 2006, Presiding Judge Wieben Stock had received a note from Dr. Speare confirming Christine had been hospitalized. James does not contend Christine failed to present sufficient evidence she had been hospitalized.

■ Under California Rules of Court, rule 1.100(f)(2), a trial court may deny an accommodation request when the court determines "[t]he requested accommodation would create an undue financial or administrative burden on the court . . . ." Christine's requested accommodation of a trial continuance would not have created an *undue* financial or administrative burden on the court. While we share Judge Silbar's concern over the cost to the public of multiple trial continuances, such costs must be accepted under certain circumstances as necessary for effective access to judicial services for disabled persons.

■ Under California Rules of Court, rule 1.100(f)(3), the court may deny an accommodation request when the court determines "[t]he requested accommodation would fundamentally alter the nature of the service, program, or activity." Presiding Judge Wieben Stock determined a trial continuance would fundamentally alter the nature of the service provided "insofar as it would . . . inappropriately countermand the discretion and duties of the trial judge in the matter, who is otherwise fully qualified to consider Ms. C[.]'s reasonable requests, in an appropriate manner." That determination was in error. Rule 1.100(b) requires each superior court to appoint an ADA coordinator to "address requests for accommodations" under the ADA. The duty to address requests for accommodations necessarily includes the power to grant or to deny them.

As James states, "Judge Wieben-Stock was the ADA coordinator for the Orange County Superior Court" and "Christine's ADA requests were correctly directed to her." Granting the Second ADA Request would not have interfered with Judge Silbar's power to control the courtroom because Presiding Judge Wieben Stock, as the superior court ADA coordinator, had the power under California Rules of Court, rule 1.100(b) to decide the Second ADA Request.

James argues the Second ADA Request "fundamentally alters the court's control of the judicial process because [Christine] is attempting to place herself outside the scope of the trial court's control of its judicial process." Christine placed herself squarely within the scope of the court's judicial process by requesting an ADA accommodation under California Rules of Court, rule 1.100. Christine followed the procedures for making a request for an ADA accommodation. The trial court's control of the judicial process was circumscribed by rule 1.100, which limited the grounds on which the trial court could deny an ADA request.

 James argues the trial court's denial of the Second ADA Request must be reviewed under the abuse of discretion standard applicable to motions to continue a trial. He similarly argues the ADA did not excuse Christine from complying with the rules of civil procedure, including rules governing requests for trial continuances. Those arguments mischaracterize the nature of Christine's request. Although the accommodation Christine requested was a trial continuance, her request was for an *ADA accommodation*. Requests for ADA accommodations are governed by California Rules of Court, rule 1.100. Christine followed the rules of civil procedure in seeking an ADA continuance by complying with rule 1.100. She was not required to bring a motion to continue the trial to seek a continuance as an ADA accommodation. Rule 1.100(f) states an ADA accommodation request may be denied *only when* the court makes at least one of three determinations identified in the rule. The rule does not make an exception for an accommodation in the form of a trial continuance.

James argues California Rules of Court, rule 1.100 permitted Presiding Judge Wieben Stock, as the ADA coordinator, to defer to Judge Silbar in ruling on Christine's ADA accommodation requests. We disagree with this reading of rule 1.100. Even if that interpretation of rule 1.100 were correct, we would reverse because Judge Silbar did not make any of the determinations required under rule 1.100(f) to deny an accommodation request.

Granting the Second ADA Request would not have fundamentally altered the nature of the judicial service, program, or activity affected by the request. That judicial service—the trial—would have been offered in the same form at a later date.

In awarding James attorney fees and again in denying Christine's motion for a new trial, Judge Silbar expressed concern that if every case proceeded as this one had, "we wouldn't get anything done, and it would make really a mockery of the system." Judge Silbar's frustration was understandable, but the issue was not whether a trial continuance should be granted in every case: The only issue presented was whether to grant a trial continuance as an ADA

accommodation pursuant to California Rules of Court, rule 1.100 under the circumstances of this case. Here, Christine suffered from bipolar disorder and cancer and, on advice of her psychiatrist, had been hospitalized the day before trial was set to resume. Christine had been representing herself in propria persona because she could not afford to pay her counsel and because the trial court had denied her request to liquidate and distribute some community assets. There had been prior requests for continuances, but James had not opposed them and Judge Silbar granted one on August 3, 2005, stating, "[t]he trial continuance is to benefit both sides."

■ In ruling on the motion for a new trial, Judge Silbar expressed the belief that Christine was manipulating the court system to avoid trial and that her psychiatrist was not credible. However, it was undisputed Christine was disabled within the meaning of the ADA, had been hospitalized on February 28, 2006, and was under a physician's care. Christine was representing herself in propria persona. Therefore, a trial continuance was a reasonable, if not necessary, accommodation, even though it meant a delay in conducting the trial. In ruling on the Second ADA Request, the only determination to be made was whether any of the grounds listed in California Rules of Court, rule 1.100(f) for denying the request was present.

The question remains of what to do to prevent this scenario from recurring, to ensure the parties' justified needs are met, and to resolve the matter justly and expeditiously. One possible solution is to make sure Christine is represented by counsel. The enormous disparity in income and resources between Christine and James is obvious from the record. A pendente lite needs-based attorney fees award to Christine under Family Code section 2030 might be justified under the circumstances. Also, depending on Christine's condition, it might be necessary to address again the issue of appointing a guardian ad litem. These options are not an exclusive list of possible future actions.

In conclusion, none of the grounds listed in California Rules of Court, rule 1.100(f) for denying an ADA request for accommodation was present when Presiding Judge Wieben Stock denied the Second ADA Request. Denying the Second ADA Request therefore constituted reversible error. At oral argument, the issue was raised whether the first two days of trial (Aug. 2 & 3, 2005) would stand or would be subject to retrial in the event of a reversal of the judgment. We conclude the latter: As we are reversing the judgment, any retrial must be of the entire matter, from the outset.

As the prevailing party, and in the interests of justice, Christine is awarded her costs on appeal. (Cal. Rules of Court, rule 8.276(a).) In her reply brief, Christine asks us to award her attorney fees too. While it appears to us Christine may be entitled to recover her appellate attorney fees under Family

Code sections 2030 and 2032, we must leave that decision to the trial court's discretion, upon appropriate motion in that court. (See *In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269 [111 Cal.Rptr.2d 755]; Cal. Rules of Court, rule 3.1702(c).)

## IV.

### DISPOSITION

The judgment is reversed and the matter is remanded for further proceedings. Appellant shall recover her costs incurred in this appeal.

Sills, P. J., and Rylaarsdam, J., concurred.

A petition for a rehearing was denied February 14, 2008, and respondent's petition for review by the Supreme Court was denied April 16, 2008, S161114. George, C. J., did not participate therein. Baxter, J., was of the opinion that the petition should be granted.