Filed 9/26/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| FRIENDS OF THE SOUTH FORK GUALALA, | A168163 |
| Plaintiff and Appellant, | |
| v. | (Sonoma County Super. Ct. No. SCV-268396) |
| DEPARTMENT OF FORESTRY AND FIRE PROTECTION, | |
| Defendant and Respondent; | |
| RICHARDSON RANCH, LLC, | |
| Real Party in Interest and Respondent. | |

**I. INTRODUCTION**

In this California Environmental Quality Act (CEQA) (Pub. Resources Code § 21000 et seq.) proceeding, we consider whether the trial court erred in denying an application for disability accommodation under rule 1.100 of the California Rules of Court (rule 1.100). The rule 1.100 application at issue, made by a lawyer who was serving as counsel of record to Friends of the South Fork Gualala (FSFG), sought extensions of time to meet briefing deadlines and other relief from routine procedural obligations. We see no error and will affirm.

1

We set forth the full procedural setting in greater detail below, but to frame our holding properly at the outset, a quick thumbnail sketch of the relevant background is as follows.

In July 2023, the court granted in part and denied in part a petition for a writ of mandate brought by FSFG challenging the approval by the California Department of Forestry and Fire Protection (CalFIRE) of a rancher's plan to harvest timber (the Plan). Although the court granted the petition on the merits, vacating the approval as deficient in several respects—inadequate consideration of geologic, biologic and cultural resources—it rejected FSFG's complaint that CalFIRE's tardy publication of a complete written response to public comments (Official Response) rendered the approval defective. In FSFG's view, the incomplete and late Official Response should have been an additional ground for vacatur.

Unsatisfied with the scope of its victory due to the ruling for CalFire on this one issue, FSFG now appeals on the ground that the trial court denied it a full and fair opportunity to litigate the completeness and validity of the Official Response, which it characterizes as not only tardy but intentionally false. According to FSFG, the trial court erroneously denied a request from its counsel, Daniel Garrett-Steinman, for 1) more time to prepare a supplemental brief addressing defects in the Official Response; 2) leave to file a supplemental brief in support of its request for issue sanctions; 3) an order relieving Garrett-Steinman from the obligation to engage in further meet-and-confer activity; and 4) a continuance of the merits hearing on its mandate petition.

All of these requests—for leave to file supplemental briefing, for relief from meet-and-confer obligations, and for a continuance of the merits hearing—were made in the form of an application for disability

accommodation under rule 1.100.  Citing the broad applicability of rule 1.100 to "any lawyer, party, witness, juror, or other person with an interest in attending any proceeding before any court of this state" (rule 1.100(a)(2)), Garrett-Steinman sought relief based on his bipolar disorder.  Because the trial court was presented with an uncontested, qualifying disability (rule 1.100(a)(1)) from a person entitled to invoke the protections of rule 1.100, FSFG contends the court had no choice but to grant the requested accommodation.

We decline to endorse such a wooden application of rule 1.100.  At issue here is the last in a series of seven requests for scheduling relief over the course of eight months by either FSFG directly or by its counsel Garrett-Steinman, all of which were based on Garrett-Steinman's bipolar disorder.  Six prior requests were actually or in effect granted.  The court's grant of relief on the previous six occasions simply led to more accommodation requests and stalled progress toward final resolution of the case.  CEQA actions have statutory calendaring priority and must be "quickly heard and determined."  (Pub. Resources Code, § 21167.1.)  Having filed a proceeding subject to calendaring priority, FSFG was obliged to move the case forward with dispatch.  We have no trouble concluding that, in the circumstances presented here, the court was within its discretion to deny a seventh request for postponement.

## II. BACKGROUND

In December 2020, real party in interest below and respondent in this appeal Richardson Ranch LLC (Richardson Ranch)[1] submitted a timber harvest plan to CalFIRE.  The Plan called for the harvesting of 267 acres of

---

[1] We will refer to CalFIRE and Richardson Ranch collectively as "respondents" in this appeal.

3

redwood forest along the South Fork of the Gualala River. This land is located in the Gualala River Watershed, which comprises 7,904 acres. Richardson Ranch owns 62 percent of the watershed acreage and is the only entity that has conducted timber harvesting in it during the last decade.

CalFire made the Plan available for public comment and received 23 letters from the public. On April 13, 2021, CalFIRE approved the Plan and published an Official Response. According to CalFIRE, it intended at that time to publish a complete, 87-page response but instead published an incomplete, 25-page version because of a clerical error; it then realized its mistake, and on May 20, 2021, published a corrected Official Response (the Corrected Official Response).

On May 13, 2021, prior to the publication of the Corrected Official Response, FSFG filed in Sonoma County Superior Court a petition for a writ of mandate and a complaint for declaratory and injunctive relief and attorney fees against CalFIRE and Richardson Ranch. FSFG challenged CalFIRE's approval of the Plan under CEQA and alleged the Official Response was inadequate.

Over the next two years, the parties litigated their dispute. The litigation included significant disagreements regarding the administrative record, discovery, and CalFIRE's process of preparing the Official Response and the Corrected Official Response. Many of these disputes arose out of discovery propounded by FSFG regarding CalFIRE's initial failure to publish a complete response to the public comments.

Based on things such as CalFIRE's failure to produce an original signature page for the Official Response, FSFG took the view that CalFIRE deliberately published an incomplete response to the public comments on April 13, 2021. According to FSFG, CalFIRE lied about whether the 87-page

4

Corrected Official Response existed when it filed the earlier, incomplete version—CalFIRE claimed it inadvertently omitted 63 pages—and, based on that allegation, accused CalFIRE of spoliation of evidence. This led to further disputes between the parties regarding FSFG's efforts to obtain discovery from CalFIRE on the allegations of procedural irregularity and, ultimately, to an effort by FSFG to obtain evidentiary and issue sanctions for discovery abuse and spoliation of evidence.

Between August 2022 and June 2023, while FSFG sought to litigate these sanctions issues, it repeatedly requested continuances of hearings and extensions of various briefing deadlines, each time citing the mental health disability of its counsel, Garrett-Steinman. According to FSFG, respondents' counsel engaged in a pattern of "mistreating" Garrett-Steinman because of his mental health disability, causing him to suffer manic episodes and making it difficult for him to meet briefing deadlines and attend hearings. Respondents and their counsel deny any such "mistreatment" of Garrett-Steinman.

### A. *The Court Grants Six Requests for Rescheduling Between August 2022 and April 2023, Then Denies the Seventh*

Without getting into the competing narratives about how the opposing lawyers in this case treated one another, suffice it to say that the court gave measured and thoughtful consideration to the impact these interpersonal frictions had on calendar management, and until May 2023, appears to have adopted the view that neither side was any more responsible for causing delay than the other.

But that slowly changed. From August 2022 to April 2023, FSFG and Garrett-Steinman asked the trial court for six sets of continuances, extensions of time, and other calendar adjustments on different discovery and trial matters. Most of these requests were made in the form of disability

5

accommodation requests under rule 1.100.[2]  The trial court granted them all in whole or in part except for the April 2023 request, which it initially denied but later in effect granted in a separate order on its own motion.  All six requests were based on Garrett-Steinman's mental health disability.  Specifically, taking them one by one, the court dealt with the following requests.

First, in August 2022, Garrett-Steinman asked the court to grant FSFG permission to file a motion to reopen discovery regarding CalFIRE's Official Response as a disability accommodation.  The court granted this request and scheduled the hearing on the motion for October 14, 2022.  It also ordered the parties to obtain leave of court before filing any further motions in the action.

Second, in October 2022, the trial court granted FSFG's motion to reopen discovery so it could depose certain CalFIRE staff regarding the Official Response.  FSFG did not present this motion as a disability accommodation request, but the court noted Garrett-Steinman was "suffering from medical issues for which he is seeking treatment," which "have resulted in the delays at issue."  It concluded that in light of these health issues, FSFG had acted with reasonable diligence and, further, that there was "evidence indicating that the conduct of [respondents] has contributed to the problems and exacerbating delay."

Third, in December 2022, Garrett-Steinman made another request for a scheduling adjustment, again in the form of a disability accommodation.[3]

_____

[2] Rule 1.100 governs courts' granting of disability accommodations pursuant to Civil Code section 51 et seq. and the Americans with Disabilities Act of 1990 (ADA).  (Rule 1.100(a)(1).)

[3] Garrett-Steinman submitted this request and the remainder of his disability accommodation requests on an "MC-410 Disability Accommodation Request" form, which expressly refers to rule 1.100.

6

The court granted a continuance of the merits hearing from December 16, 2022 to February 17, 2023,[4] and modified the briefing schedule on the merits. The court denied Garrett-Steinman's request to extend the discovery schedule, but later granted an extension after this court issued an alternative writ on the subject in response to a writ petition filed by FSFG.[5]

Fourth, in February 2023, the trial court granted another disability accommodation request by Garrett-Steinman, continuing the merits hearing to March 24, 2023, modifying the related briefing schedule, and setting a briefing schedule for a sanctions motion by FSFG regarding CalFIRE's purported discovery abuses related to its Official Response.[6]

Fifth, in March 2023, Garrett-Steinman submitted yet another disability accommodation request, this time for a four-week suspension of proceedings, to April 10, 2023, and for a continuance of the merits hearing. Garrett-Steinman stated his health had "further deteriorated," that he was "unable to complete pending briefs," and that "petitioner missed the prior deadlines because its counsel was on the verge of" a mental health crisis.

---

[4] Previously, the court had scheduled the merits hearing on FSFG's writ petition for August 12, 2022, then had rescheduled it for December 16, 2022.

[5] We issued an alternative writ directing the superior court to vacate its denial order and issue a new order explaining its reasons for denying the request or, alternatively, to show cause why it should not be compelled to take that action. The trial court then vacated its denial order and issued an order in January 2023 extending the briefing and discovery schedule and continuing the merits hearing to February 21, 2023.

[6] In March 2023, the parties stipulated to, and the court ordered, a modified briefing schedule and a continuance of the merits hearing to April 11, 2023.

Further, Garrett-Steinman wrote, "[p]etitioner is concerned for its counsel's long-term mental health and believes a significant disruption in the proceedings may occur absent an accommodation." He represented that "[p]etitioner will make good-faith efforts to associate additional counsel during the suspension of proceedings" and "believes its efforts will be successful due to the consequential nature of the matters at issue." The trial court granted this request.

Sixth, on April 7, 2023, Garrett-Steinman once again applied for a disability accommodation, this time requesting a continuance of the merits hearing to June 9, 2023, and a modified briefing schedule regarding both FSFG's motion for evidentiary and issues sanctions against CalFIRE and the merits of its claim regarding CalFIRE's Official Response. He stated this was "necessary because proceedings in this matter are currently suspended pursuant to petitioner's accommodation request of March 13, 2023, which this Court granted." He added that the parties had discussed but could not agree on a new schedule.

Initially, the trial court was unmoved. It denied Garrett-Steinman's April 2023 accommodation request on the grounds that to grant it "[c]reates an undue financial or administrative burden for the court" and "[c]hanges the basic nature of the court's service, program, or activity." It indicated the grounds for denial by checking boxes corresponding to the above-noted reasons on the request form. The court also concluded that "[c]ontinuances and revised briefing schedules are not accommodations contemplated under the Act." It explained, "Unlimited continuances, ad infinitum, seem outside the scope of the ADA." The court noted Garrett-Steinman's previous representation that he was seeking to associate counsel, an effort he said he believed would avoid the need for another continuance.

8

Explaining further, the court stated, "Significant time has passed" and the promise of no further continuance requests "has not been fulfilled. . . . [T]he matter has been pending for a long time and at some point it is imperative that justice be served for all parties and the matter heard to conclusion. More continuances will be costly to the court as this matter has been special set on several occasions su[p]planting jury trial time and requiring additional staffing for each date. The matter has been set for merits hearing at least four times, and remote appearance was approved as a specific accommodation to the applicant."

Despite these expressed reservations, the court in effect granted another accommodation to Garrett-Steinman based on his mental health disability. On its own motion, the court issued an "order for continuance of hearing on merits." For good cause, the court continued the merits hearing to June 9, 2023, and further modified the briefing schedule as requested by Garrett-Steinman in his accommodation request, extending into late May 2023 the time for the filing of FSFG's briefs on its pending sanctions motion.

But in May 2023, Garrett-Steinman submitted another disability accommodation request. He sought more modifications to the briefing schedule for FSFG's pending sanction motion and added a request for an extension of the schedule for briefs on the merits of the parties' Official Response dispute, proposing to extend the deadlines for completion of this briefing into late June 2023. He also asked the court to set a hearing on these matters in July 2023, after the June 9, 2023 merits hearing, and requested that he be relieved of further meet-and-confer obligations "in the interest of preventing any further disruptions to the schedule." CalFIRE filed an objection to the accommodation request.

9

Garrett-Steinman explained his requested accommodations at length. Reiterating, once again, the litany of challenges he had been presenting for nearly a year, he said he suffered from "numerous mental health disabilities," which disabilities had "precluded timely completion of petitioner's sanctions motion and public comment brief." He suffered from manic episodes that could "last many weeks and [had] consistently caused a nearly complete halt in [his] workflow." He said he had started to take new medication; he said he had diligently attempted to complete the briefs at issue, such as by working six days a week for several weeks on the sanctions motion (although he could only complete a modest amount of work a day); and he requested to be relieved from the obligation to engage in meet-and-confer communications with opposing counsel related to the briefing for which he sought time extensions.

The trial court denied this latest accommodation request, again on the grounds, checked by the court on the response to the request form, that to grant it would "[c]reate[] an undue financial or administrative burden for the court" and "[c]hange[] the basic nature of the court's service, program, or activity." The court stated, "This is a request for continuance rather than an accommodation. As explained in the previous request, granting this request will create undue financial and administrative burdens to the court in adding an additional hearing, additional administrative processing of documents, and duplication of court processing which has already burdened the court numerous previous times due to prior similar requests. Petitioner has not actually used the previously granted accommodations, but instead has continued to ask for additional time."

FSFG filed a petition for writ of mandate and request for stay with this Court seeking review of the trial court's denial of Garrett-Steinman's May

10

2023 request.  We summarily denied this petition and request on June 7, 2023.

**B. *The Trial Court's Rejection of FSFG's Sanctions Motion and Ruling on the Merits***

As we have indicated, FSFG filed an unsuccessful motion for sanctions and a supporting brief on April 19, 2023, but did not file any further briefing on the subject because of the trial court's denial of Garrett-Steinman's May 2023 accommodation request.[7]  The April 2023 sanctions motion was based on CalFIRE's purported spoliation of evidence relating to the Official Response.  FSFG sought an order that the trial court "treat as an established fact . . . that there has never existed an 87-page public comment response document for [the Plan] with an original signature . . . ."  Denying the motion, the court found "nothing demonstrates that [CalFIRE] in any way has engaged in discovery abuse" and that there was "no basis for imposing the requested sanctions."  The court also concluded that "neither the evidence at issue nor the requested sanctions would have any bearing on the decision on the merits."

The trial court held the merits hearing on FSFG's petition on June 9, 2023.  In a written order filed on June 14, 2023, the court granted the petition in part and denied it in part.

Specifically, the court granted the petition "with respect to the [Plan's] analysis of impacts on sedimentation, impacts on biological resources, impacts on cultural resources, cumulative impacts, and analysis of alternatives."  It denied the petition "with respect to the claim that the late

---

[7] FSFG contends that, as a result of the trial court's denial, it briefed only the "evidentiary sanctions" part of its motion and was unable to brief the "issues sanctions" portion of the motion.  This may be the case, but in its brief filed on April 19, 2023, it nonetheless requested "issue sanctions."

11

publication of the full 87 pages of the official responses renders the responses defective or improper to consider, or otherwise violates CEQA." And it found that FSFG "has cited nothing showing that the failure to publish the full 87-page set of responses . . . itself results in a prejudicial violation of CEQA. Although [CalFIRE] did not publish the full set of responses until May 2021, more than a month after the [Plan] approval, the evidence and record demonstrate that [CalFIRE] in fact had prepared this complete set of responses prior to the approval, but it simply failed to publish the full set at the time of approval due to a clerical error."

FSFG filed a notice of appeal on June 28, 2023 from a "[j]udgment after court trial."[8]

### III. DISCUSSION

#### A. *The Appeal is Not Moot*

Respondents argue that the case is moot. Because the parties have indicated their intention to litigate the issue of prevailing party attorney fees, and because our resolution of this appeal could affect that ruling, we disagree.

In July 2023, the trial court, in accordance with its order on the merits and judgment, issued a peremptory writ of mandate directing CalFIRE to set aside its approval of the Plan and the Notice of Conformance based thereon and file an initial return in the court within 60 days specifying the steps taken to comply with the writ. That same month, the parties, relying on

---

[8] We "may treat a notice of appeal filed after the superior court has announced its intended ruling, but before it has rendered judgment, as filed immediately after entry of judgment." (Cal. Rules of Court, rule 8.104(d)(2).) On July 13, 2023, after FSFG filed its notice of appeal, the trial court issued a judgment granting in part and denying in part FSFG's petition for the reasons we have summarized.

California Rules of Court, rule 3.1702(b)(2)(B), agreed to extend the time for the filing of a motion for attorney fees in the case while this appeal was pending.

In September 2023, CalFIRE set aside its approval of the Plan and filed a return in the trial court. Shortly thereafter, the trial court filed an order discharging the writ. Subsequently, pursuant to the parties' stipulation, the trial court ordered that its discharge did not deprive it of the jurisdiction necessary to take such further action as may be directed by this court.

Based on these events, respondents argue that this appeal is moot because FSFG cannot obtain any further relief as a result of this appeal. FSFG argues this matter is not moot for multiple reasons, including that our appeal could impact the court's ruling on attorney fees. We agree with the latter point and therefore do not address the other arguments FSFG makes.

Code of Civil Procedure section 1021.5 provides, "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

As FSFG points out, appellate courts have concluded that an otherwise moot CEQA claim is not moot when the resolution of the merits of an appeal

13

affects a party's entitlement to attorney fees.[9]  We reach the same conclusion here.  FSFG argues that, in theory, we might decide that the trial court erred in denying Garrett-Steinman's May 2023 accommodation request; that such an error could have impacted the trial court's resolution of FSFG's Official Response claim; and that, as a result, our decision could ultimately impact the trial court's resolution of any motion for attorney fees.  Suffice it to say we agree.  The chain of reasoning is somewhat attenuated, but it has enough plausibility to convince us there is a live issue here.  Accordingly, though the question is close, we conclude the appeal is not moot.

### B. *The Rule 1.1000 Application*

### 1. Applicable Rule 1.100 Principles

"It is the policy of the courts of this state to ensure that persons with disabilities have equal and full access to the judicial system."  (Rule 1.100(b).)  To accomplish this goal, rule 1.100 allows " '[p]ersons with disabilities,' " including lawyers, to apply for " '[a]ccommodations,' " meaning "actions that result in court services, programs, or activities being readily accessible to and usable by persons with disabilities."  (Rule 1.100(a)(1)–(3).)  Such

---

[9] See *Save Our Residential Environment v. City of West Hollywood* (1992) 9 Cal.App.4th 1745, 1751 ("[b]ecause the award of attorney fees depends on the propriety of the trial court's ruling on the merits of the action, the appeal is not moot"); *Carson Citizens for Reform v. Kawagoe* (2009) 178 Cal.App.4th 357, 365 (appeal not moot "because the propriety of the trial court's ruling on the merits of the action determines whether Citizens was eligible for an award of attorney fees"); *Indio Police Command Unit Assn. v. City of Indio* (2014) 230 Cal.App.4th 521, 534 (quoting *Carson Citizens for Reform v. Kawagoe* to conclude matter not moot because "the issue of whether [the moving party] properly prevailed is relevant to the attorney fees order").  Although unlike this case, those cases involved appeals from, among other things, attorney fee rulings, that is a distinction without difference in light of the parties' plain intention to litigate the issue, as seen by their stipulation extending the time for attorney fee motions to be filed.

14

accommodations "may include making reasonable modifications in policies, practices and procedures . . . ." (Rule 1.100(a)(3).)[10]

"Rule 1.100(a) and (b) allows persons with disabilities covered by the Unruh Civil Rights Act, Civil Code section 51 et seq., the ADA, or other applicable state and federal laws to apply for accommodations to ensure full and equal access to the judicial system. . . . Under the appropriate circumstances, an accommodation may be a trial continuance." (*Vesco v. Superior Court* (2013) 221 Cal.App.4th 275, 279, citing *In re Marriage of James & Christine C.* (2008) 158 Cal.App.4th 1261, 1273, fn. 4 (*Marriage of James*).)

"A court may deny a properly stated request for accommodation for only one of three reasons," including "if the accommodation 'would create an undue financial or administrative burden on the court' (rule 1.100(f)(2))" or the " 'accommodation would fundamentally alter the nature of the service, program, or activity.' (Rule 1.100(f)(3).)" (*Biscaro v. Stern* (2010) 181 Cal.App.4th 702, 708–709 (*Biscaro*).) The trial court must state the reason for any denial. (Rule 1.100(e)(2)(B).) Its ruling should be based on the particular circumstances of the case before it. (*Marriage of James*, *supra*, 158 Cal.App.4th at pp. 1276–1277.)

---

[10] Rule 1.100(a)(3) states in full: " 'Accommodations' means actions that result in court services, programs, or activities being readily accessible to and usable by persons with disabilities. Accommodations may include making reasonable modifications in policies, practices, and procedures; furnishing, at no charge, to persons with disabilities, auxiliary aids and services, equipment, devices, materials in alternative formats, readers, or certified interpreters for persons who are deaf or hard-of-hearing; relocating services or programs to accessible facilities; or providing services at alternative sites. Although not required where other actions are effective in providing access to court services, programs, or activities, alteration of existing facilities by the responsible entity may be an accommodation."

## 2. Standard of Review

The applicable standard of appellate review here is abuse of discretion. (*Gropen v. Superior Court* (2023) 89 Cal.App.5th 1068, 1075, 1082.) "Under an abuse of discretion standard of review, the 'trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious.' [Citation.] A 'court abuses its discretion " 'where no reasonable basis for the action is shown.' " ' " (*In re Tobacco Cases II* (2015) 240 Cal.App.4th 779, 790.) FSFG's argument that the trial court "had no choice" but to grant him a seventh continuance overreads *Marriage of James*, *supra*, 158 Cal.App.4th at p. 1275, a case where the trial court failed to ground its denial of a disability accommodation on any of the three grounds specified in rule 1.100(f), and thus wholly failed to act within the prescribed legal boundaries of rule 1.100.

*Marriage of James* shows that the deference we owe trial courts under the abuse of discretion standard has legal limits and depends on the legal context presented. " 'The scope of discretion always resides in the particular law being applied, i.e., in the "legal principles governing the subject of the action . . ." Action that transgresses the confines of the applicable principles of law' is " 'outside the scope of discretion and we call such action an "abuse" of discretion.' " (*Department of Parks & Recreation v. State Personnel Bd.* (1991) 233 Cal.App.3d 813, 830–831 (*Department of Parks & Recreation*).) Under this principle, we defer to choices made by the trial court within a legally permitted range of discretion, but always stand ready to review de novo whether the trial court properly applied the law in the first place.

Also in play here is a second level of subtlety to the abuse of discretion standard. Any exercise of legal discretion will rest upon some factual underpinning, which itself is entitled to deferential substantial evidence

16

review.  (*Department of Parks & Recreation*, *supra*, 233 Cal.App.3d at p. 831 [while the substantial evidence standard "deals with evidentiary proof," the broader abuse of discretion standard "is concerned with legal principles"].) This embedded level of deference to predicate fact-finding reflects the institutional reality that trial courts are generally better positioned to resolve contests of historical fact than we are in the appellate courts.  It applies here to the assessment of procedural events unfolding before the trial court and their impact on the court's case management obligations, just as surely as it does to substantive facts.

The ruling FSFG challenges in this case easily passes muster under this two-level standard for discretionary decisionmaking.  Contrary to FSFG's suggestion, we are not dealing with a legal issue that compels us to say the trial court's discretion could be exercised in only one way.  Nor is this a "mixed question" case (e.g., *Haworth v. Superior Court* (2010) 50 Cal.4th 372, 385–386) where the factual aspects of a trial court ruling under review are undisputed or admitted, and the legal aspects of the ruling—generally implicating a constitutional question—predominate, thus allowing us to substitute our judgment because the underlying legal premise of the trial court's ruling demands unfettered appellate judgment.  (See *People v. Cromer* (2001) 24 Cal.4th 889, 901; *People v. Uribe* (2011) 199 Cal.App.4th 836, 857.) As we explain further below, the trial court's discretionary choices here were legally permitted, and the factual foundation for those choices is well supported by the record.

### 3. The Trial Court Did Not Abuse Its Discretion

Under rule 1.100(a), a trial court's discretion is structured and limited. Not only are the available grounds for denying an accommodation request limited to those specified in rule 1.100(f), as noted above, but certain formal requisites of rule 1.100 decisionmaking must always be followed.  For

17

example, the court must respond promptly in writing to a disability accommodation request (rule 1.100(e)(2)), and the response must indicate whether the request is granted or denied or whether some alternative to the requested accommodation will be made available (rule 1.100(e)(2)(A)–(C)). Failure to rule on a properly presented rule 1.100 disability accommodation request *may*, by itself, warrant reversal. (See *Biscaro, supra,* 181 Cal.App.4th at p. 705 [reversing and remanding for further consideration where the court failed to rule on a rule 1.100 request].) But the fact that a trial court's discretion under rule 1.100 is structured and limited does not mean it is left with no discretion at all once a participant in litigation presents a qualifying disability, as FSFG would have it.

By its terms, rule 1.100(e)(2)(D) permits consideration of the "duration" of the accommodation to be provided. And a requested accommodation may be denied outright if it will either "create an undue financial or administrative burden on the court" (rule 1.100(f)(2)) or "fundamentally alter the nature of the service, program, or activity" (rule 1.100(f)(3)). Here, the court displayed considerable patience with a lawyer who was clearly capable of handling the complexities of a CEQA case—as evidenced by the overall result on the merits—but whose medical condition apparently prevented him from working at the pace the court was entitled to expect in a proceeding subject to statutory calendaring priority.[11] What eventually happened, as we

---

[11] In a CEQA proceeding, "all courts in which the action or proceeding is pending shall give the action or proceeding preference over all other civil actions, in the matter of setting the action or proceeding for hearing or trial, and in hearing or trying the action or proceeding, so that the action or proceeding shall be quickly heard and determined." (Pub. Resources Code, § 21167.1; *Stockton Citizens for Sensible Planning v. City of Stockton* (2010) 48 Cal.4th 481, 494, 500 [noting in a review of a CEQA writ proceeding that

read the record, is that the court's patience ran out. After multiple requests for scheduling postponements, and after FSFG's failure to retain additional counsel, the trial court appears to have concluded FSFG was attempting to use Garrett-Steinman's medical condition as an excuse for scheduling postponements of indefinite duration.

Faced with these circumstances, it was reasonable to deny a request for further extensions of the schedule into mid-summer 2023, a point in time more than two years after FSFG filed its writ petition. Not only did FSFG's pattern of repeated requests for adjustment of the schedule unduly burden the court by interfering with its ability to manage other cases on its docket efficiently, but it is fair to say, as the court did here, that permitting FSFG to continue to interpose its own open-ended scheduling preferences "fundamentally alter[ed] the nature" of this expedited CEQA proceeding. We reject FSFG's argument that the trial court was required to grant a further accommodation in circumstances where, as the record makes clear, the court clearly believed that granting another accommodation was an exercise in futility. Counsel for FSFG himself stated that he continued to suffer manic episodes that could last for "many weeks" and which had "consistently caused a nearly complete halt in [his] workflow." In short, from the trial court's perspective, there was no end in sight to Garrett-Steinman's requests for more time.

---

"expedited briefing and hearing schedules are required," citing Pub. Resources Code §§ 21167.1, 21167.4]); see *Tiburon Open Space Committee v. County of Marin* (2022) 78 Cal.App.5th 700, 782 ["CEQA was meant to serve noble purposes, but it can be manipulated to be a formidable tool of obstruction"].)

Two months earlier, in support of a previous accommodation request, Garrett-Steinman had represented to the court that FSFG would seek associate counsel in order to avoid the need for further continuances, and that he would account to the court for these efforts if they failed. Yet he made no mention of any such efforts in his two subsequent requests and FSFG did not retain associate counsel. Thus, despite numerous continuances and extensions of time, Garrett-Steinman remained unable to effectively participate in the proceedings. The court had little reason to believe further time accommodations would enable him to fulfill his briefing obligations on the expedited schedule demanded of the case, or to obtain assistance from new counsel brought into the case by FSFG to help him.

FSFG's insistence that the trial court had no choice but to grant its May 2023 request for accommodation under rule 1.100 is based primarily on *Marriage of James*, which explains why it urges us to apply de novo review. The holding in that case warrants in depth consideration. There, a divorcing spouse, Christine C., appealed from a marriage dissolution judgment based on the trial court's denial of her disability accommodation request. (*Marriage of James*, *supra*, 158 Cal.App.4th at p. 1264.) She suffered from bipolar disorder and breast cancer. (*Ibid*.) Before trial on her spouse James C.'s dissolution petition in August 2005, the court denied Christine's ADA accommodation request for a 90-day trial continuance (*Marriage of James*, at p. 1266), but the assistant presiding judge of the court later granted a continuance to November 2005 (*id*. at pp. 1266–1267). A few months later, after denying James's request that a guardian ad litem be appointed for Christine, who had begun to represent herself because she could no longer afford to pay her lawyer, the court rescheduled the trial for March 2006 based

20

on a doctor's opinion that Christine remained unfit to participate in the trial. (*Id.* at pp. 1267–1269.)

In February 2006, Christine made a third request for a continuance due to her medical condition based on a doctor's opinion that she should be hospitalized because of stress caused by the case, and then she checked herself into a hospital the day before the trial was to resume. (*Marriage of James*, *supra*, 158 Cal.App.4th at pp. 1265, 1269.) The presiding judge of the superior court denied her request, the trial was completed in her absence, and the court ruled on the division of the marital assets, spousal support, and attorney fees. (*Id.* at pp. 1264, 1271.) In denying a motion for new trial, the trial judge did not mince words: "This is absurd, absolutely absurd. Two-and-a-half years, 30 to 35 appearances on a very simple dissolution is unacceptable, costly, and inexcusable. [¶] The court finds that the tactics by [Christine] were manipulations to obtain continuances." (*Id.* at pp. 1272–1273.)

Reversing, the appellate panel observed that "Christine suffered from bipolar disorder, a potentially incapacitating mental illness which may result in disability under the ADA." (*Marriage of James*, *supra*, 158 Cal.App.4th at pp. 1273-1274.) The panel also noted that, because Christine was representing herself in propria persona, she "would be denied the benefit of court services unless the trial court granted" her February 2006 accommodation request. (*Id.* at p. 1274.) The panel dismissed the trial court's concern about the cost to the public of multiple trial continuances. The question, wrote the panel, "was not whether a trial continuance as an ADA accommodation should be granted in every case: The only issue presented was whether to grant a trial continuance as an ADA accommodation pursuant to . . . rule 1.100 under the circumstances of this

case." (*Marriage of James*, *supra*, 158 Cal.App.4th at pp. 1276–1277.) "While we share [the trial judge's] concern over the cost to the public of multiple trial continuances," the panel explained, "such costs must be accepted under certain circumstances as necessary for effective access to judicial services for disabled persons." (*Id.* at p. 1275.)

After comparing the record presented here to the scenario in *Marriage of James*, we believe that case is readily distinguishable. We grant that there are some broad similarities to this case—the nature of the disability for one—but we view those similarities as superficial at best. Here, unlike the trial court's rule 1.100 denial in *Marriage of James*, the denial of Garrett-Steinman's May 2023 accommodation request was explicitly on grounds specified in rule 1.100, subdivision (f). Moreover, not only are we dealing with a proceeding that has statutory calendaring priority, but the person whose disability requires accommodation is a lawyer serving as counsel of record.

Why do we attach importance to the fact that the rule 1.100 applicant was a lawyer, not a litigant? Fundamentally, it means this case does not present the access to justice concerns at issue in *Marriage of James*. Christine, a party representing herself, sought a third trial continuance when her doctor recommended her hospitalization, without which she would be unable to be present *and* would be unrepresented at trial in a marriage dissolution proceeding. No such dilemma arose in this case. Because FSFG was free to obtain other counsel, no credible argument can be made that it was effectively denied access to court services.

Months before presenting its seventh request for scheduling relief in May 2023, FSFG obviously recognized as much. As early as October 2022, when it moved to reopen discovery and extend various deadlines, FSFG

22

submitted a proposed order inviting the trial court to order Garrett-Steinman to withdraw as counsel.  The court declined to do so.  This extraordinary suggestion from FSFG that, if the court had concerns about Garrett-Steinman's need for more time, it should kick him off the case—surely, an invitation to commit error if there ever was one—points up a fundamental flaw in the position we are asked to adopt here.  It was not up to the court to assess whether, in order to keep the case moving forward, Garrett-Steinman should step aside in favor of some other lawyer.  It was up to FSFG to make that decision, and at an even more basic level if such a step was warranted, it was up to Garrett-Steinman himself as an officer of the court to make the decision.

## IV. DISPOSITION

The judgment is affirmed.  Respondents are awarded their costs on appeal.

STREETER, J.

WE CONCUR:

BROWN, P. J.
HITE, J.*

---

* Judge of the Superior Court of California, City and County of San Francisco, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court:    Superior Court of California, County of Sonoma

Trial Judge:    Hon. Bradford DeMeo

Counsel:    Garrett-Steinman Law Offices and Daniel P. Garrett-Steinman for Plaintiff and Appellant.

Rob Bonta, Attorney General, Annadel A Almendras, Supervising Deputy Attorney General, Micaela M. Harms and Janelle M. Smith, Deputy Attorneys General for Defendant and Respondent.

Bergeson and Daniel J. Bergeson, John D. Pernick for Real Party in Interest and Respondent.