Filed 4/24/26  G.L. v. X.L. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

| | |
|---|---|
| G.L.,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>X.L.,<br><br>  Defendant and Respondent. | C103352<br><br>(Super. Ct. No. STA-FL-CUSJ-2019-0002248) |

G.L. (mother) appeals from a vexatious litigant prefiling order entered against her in an ongoing custody proceeding between her and respondent X.L. (father).  Mother, who is representing herself on appeal as she did in the trial court, does not contest the sufficiency of the evidence supporting entry of the order.  Instead, she asserts various jurisdictional and procedural challenges to the proceedings giving rise to the order.  Finding merit to her contention that the trial court incorrectly failed to provide her with the disability accommodation the court had previously granted to enable her participation in the vexatious litigant hearing, we vacate and remand for a new hearing on father's vexatious litigant motion.

BACKGROUND

The underlying custody dispute between mother and father, the unmarried parents of J.L. (the minor), began with a juvenile dependency case in San Joaquin County

1

Superior Court. (*In re J.L.* (Feb. 3, 2020, C089168) [nonpub. opn.]; *G.L. v. X.L.* (Oct. 27, 2025, C099930, C100470, C100782) [nonpub. opn.], modified Nov. 13, 2025, review denied Dec. 17, 2025, S293989.) In 2019, the San Joaquin County juvenile court terminated its dependency jurisdiction over the minor and awarded legal and physical custody to father, with supervised visitation for mother. (*In re J.L*, *supra*, C089168.) In doing so, the court issued what is commonly known as an "exit order," commencing the San Joaquin County family court action from which the present appeal is taken. (*G.L. v. X.L.*, *supra*, C100782; see Welf. & Inst. Code, § 362.4, subds. (a) & (c); *In re T.H.* (2010) 190 Cal.App.4th 1119, 1122-1123 [when juvenile court terminates its jurisdiction over dependent child, it may make " 'exit orders' " regarding custody and visitation, which remain in effect until terminated or modified by family court].) Mother appealed the juvenile court's decision, challenging the exit order's custody and visitation determinations, and this court affirmed. (*In re J.L.*, *supra*, C089168.)

The formal exit order was filed in the new family court action on April 25, 2019. Shortly before that filing, mother initiated parallel proceedings against father in Sacramento County Superior Court: two requests for a domestic violence restraining order (DVRO), one of which also requested child custody and support, and a standalone petition for custody and support of the minor. Mother "dropped" the first of these DVRO requests, and the Sacramento court granted the second request, awarding sole legal and physical custody of the minor to mother. After learning of the earlier San Joaquin County custody order, however, the Sacramento court vacated its ruling on the second request. The Sacramento court denied the DVRO request soon after and eventually dismissed mother's petition for custody, explaining that custody jurisdiction rested with San Joaquin County. In 2024, mother filed notices of appeal from the dismissal order and two subsequent adverse orders by the Sacramento court, which became part of the appeal to this court in case No. C100782. (*G.L. v. X.L.*, *supra*, C100782.) At mother's

2

request, that appeal was consolidated with her other then-pending appeals in case Nos. C099930 and C100470.

Returning to the original San Joaquin County custody case from which the present appeal arises, in January 2025, father filed a motion to declare mother a vexatious litigant under Code of Civil Procedure section 391 and to enter a prefiling order against her.[1]  In support, father cited filings made and litigation brought against him by mother in San Joaquin County, Sacramento County, and in a Texas state court.  The matter was set for hearing on March 18, 2025.  Mother opposed the motion and, in February 2025, was granted permission to appear at the hearing by telephone.

On March 11, 2025, mother submitted a Disability Accommodation Request form at the counter of the clerk's office.  As stated on the form, mother requested permanent accommodations, including a hearing aid and a Mandarin sign language interpreter to assist with what she described as hearing loss.  On Friday, March 14, 2025, the trial court's operations manager and Americans with Disabilities Act (ADA) coordinator e-mailed mother, informing her that her accommodations request had been addressed by a court commissioner and attaching a copy of the ruling.  The commissioner denied in part mother's request, stating:  "Instead, the court will provide" a "Mandarin interpreter and a hearing device.  If you require a continuance, please address the court."[2]

---

[1]  Undesignated statutory references are to the Code of Civil Procedure.

[2]  The Disability Accommodation Request form containing mother's request and the commissioner's ruling was not formally filed in the trial court, but it is included in the appellate record as an exhibit attached to mother's notice designating the record.  Given that the form bears what appears to be a clerk's date stamp of receipt, that the California Rules of Court permit requests for accommodations to be presented ex parte and generally require that their contents be kept confidential (Cal. Rules of Court, rule 1.100(c)(1), (4)), and that the reporter's transcript makes reference to mother's accommodation request having been granted, we have no reason to question the authenticity of this document despite the lack of formal filing.

3

On March 17, 2025, mother filed a request to continue the March 18 hearing on the vexatious litigant motion to June 2, 2025.  Mother cited as reasons for the continuance "special needs accommodation" as well as "medical reasons, ADA compliance, [and] Rule 1.100."  She further stated that she had been informed the court would not be able to provide ADA accommodations at the hearing.  Mother also attached a declaration saying in part:  "I cannot hear without special accommodation.  I'm trying to get my own accommodation which is customized for my conditions.  They will not be available until at least late May 2025, if available."  She also specified that she required "a [M]andarin sign interpreter or special equipment."

That same day, the trial court denied the requested continuance, stating:  "Request would result in too long of a delay.  Request can be addressed at hearing."

Mother filed another declaration on March 17, 2025, stating that she had been diagnosed with severe hearing loss, to a level considered legally deaf.  She attached a letter from a Hearing Instrument Specialist describing the hearing screening he performed on mother and attaching an audiometry report dated March 17, 2025.  The letter stated that mother's hearing loss was "well into the range of what is classified in audiology as a Profound Hearing loss" and that mother was unable to hear him in the office until he gave her headphones and turned the levels almost to their limit.  As next steps, the specialist recommended that mother see a licensed physician "to further diagnose her challenges and determine if the loss is aidable."

The hearing on the vexatious litigant motion took place the next day, March 18, 2025.  Father appeared through his attorneys, who were present in the courtroom.  Mother's participation is less clear from the record.  The reporter's transcript begins with father's counsel stating their appearances and the trial court then calling for mother's appearance.  Hearing no answer, the court stated that mother "was on the phone earlier and had a letter that she wanted to read.  I was hoping that she would read that letter at this time."  The minute order following the hearing states that "[w]hen the court opened

4

the bridge line, mother was present and informed the court she had a letter that she wanted to read. The court had to take a break and placed the matter on hold to recall later. When the matter was recalled, mother was no longer on the bridge line." The court stated that it had been advised that mother was in the hospital but it had been unable to confirm that. One of father's attorneys stated that he had called the hospital where mother claimed to be and was told mother was not registered as a patient there.

At the hearing, the trial court stated: "[T]here were certain accommodations made for [mother,] and it was my intent to grant a continuance so that we could secure her personal presence. I believe these accommodations cannot be made over the phone, and I was prepared to suggest another date where [mother] could be personally present as she has been throughout the pendency of this case." The court further said that it "was my intent to grant the continuance, but if she's not here to request it, I'm not certain that's what she's asking for."

The trial court then proceeded to consider the pending vexatious litigant motion, and father's counsel submitted on the papers. The hearing concluded with the following statement by the court: "Well, the request for accommodation is one the Court takes very seriously. However, given that she has appeared several times without accommodation, given that she was granted an accommodation and the Court has indicated very clearly she would be afforded a continuance to appear where the accommodation could be made, I understand that there has been reported to the court that she is in the hospital, but it sounds like, [addressing father's counsel], you have confirmed she's not in the hospital that she has claimed to be treating. [¶] We'll also note that the phone number she provided for the hospital was the same phone number she has listed as her own throughout this litigation. I think I've gone relatively slow enough that if she was still on the phone line, she would have answered by now. She did speak immediately when the court initially dialed into the phone line. She was responsive to the Court's inquiries until the Court pointed out that she was responsive to the Court's inquiries. [¶] I – I can see

5

no other reason why we can't proceed today, and so I will at this point grant the motion deeming [mother] a vexatious litigant. I've been given a proposed order and I will sign it."

The same day, the trial court issued a written vexatious litigant prefiling order prohibiting mother, unless represented by an attorney, from filing any new litigation in the courts of California without approval of the presiding judge or justice of the court in which the action was to be filed. (§ 391.7, subd. (a).)

The next day, March 19, 2025, mother filed a notice of appeal from the March 18, 2025 order. This court granted mother's request to file new litigation by a party declared a vexatious litigant, allowing the appeal to proceed. (See § 391.7, subds. (a)-(c).)

Mother requested that we take judicial notice of the entry of an amended vexatious litigant prefiling order issued by the trial court on May 2, 2025, which she also moved to strike. The amended prefiling order appears identical to the original, except that it corrects mother's listed middle name. We treated the request for judicial notice as a request to augment the appellate record and granted it as such. We denied mother's motion to strike, and we construed the March 19, 2025 notice of appeal as incorporating the amended prefiling order.

In October 2025, between the filing of mother's opening brief and father's responsive brief, this court issued its opinion resolving mother's appeals in case Nos. C099930, C100470, C100782 (consolidated). (*G.L. v. X.L.*, *supra*.)

DISCUSSION

I.

We begin by addressing jurisdiction. As to our own jurisdiction, we are authorized to consider this appeal because section 904.1, subdivision (a)(6) permits appeals from orders granting or refusing to grant injunctions, and " '[t]here is no question that [a] prefiling order contemplated by section 391.7, subdivision (a) is an injunction. It is, literally, an order requiring [a party] to refrain from doing a particular act—filing any

6

new litigation without certain permission.' " (*In re Marriage of Rifkin & Carty* (2015) 234 Cal.App.4th 1339, 1347, italics omitted.)

As to the trial court's jurisdiction, mother asserts a range of challenges, but none has merit. First, mother appears to contend that the trial court had no power to designate her a vexatious litigant based on filings in cases that were litigated in courts other than the San Joaquin County Superior Court. This argument fails because a party may be deemed vexatious based on his or her conduct outside the court in which the vexatious litigant designation is sought. The vexatious litigant statutes broadly define "[l]itigation" as "any civil action or proceeding, commenced, maintained or pending in any state or federal court." (§ 391, subd. (a); *In re Marriage of Kouvabina & Veltman* (2025) 115 Cal.App.5th 293, 298, review denied Dec. 30, 2025, S294092.) And the three " 'vexatious litigant' " definitions relied upon in father's motion impose no relevant additional venue constraints, referring only to "at least five litigations other than in a small claims court" (§ 391, subd. (b)(1)), "a litigation" (§ 391, subd. (b)(2)), and "any litigation" (§ 391, subd. (b)(3)).

Moreover, contrary to mother's apparent suggestion, a court presented with a vexatious litigant motion is not called upon to re-*adjudicate* any filing or proceeding presented as evidence of the litigant's vexatious conduct. A court resolving such a motion need only decide, for motions brought under section 391, subdivisions (b)(1) and (b)(2), whether the underlying litigation was finally determined adversely to the litigant, and for motions under subdivision (b)(3), whether the litigant's filings were unmeritorious or tactics frivolous. Thus, the fact that father's motion relied in part on mother's prior legal filings in actions outside of San Joaquin County did not deprive the trial court of jurisdiction to consider father's motion.

Second, mother contends that the trial court lacked jurisdiction to decide father's vexatious litigant motion because it lacked subject matter jurisdiction over the custody case as a whole. This argument stems from mother's assertion that the San Joaquin

7

juvenile court's exit order was invalid because the formal order was filed only in the resulting family court custody case (not the juvenile dependency case) and only after she had filed her custody petition in Sacramento County.

Mother asserted this same argument in her prior appeals to this court in case Nos. C099930, C100470, C100782 (consolidated), and we expressly rejected it in our opinion issued October 27, 2025 and modified November 13, 2025.[3]  In that opinion, we held that, "[a]t no time since the dependency petition was filed in 2018 did San Joaquin County lose priority of jurisdiction over [the] minor's custody.  Mother's filing of her request for a DVRO and custody order on April 22, 2019, and any other filing she made at any time in Sacramento County did not result in the transfer of custody jurisdiction or venue from San Joaquin County to Sacramento County." (*G.L. v. X.L.*, *supra*, C100782.)  In denying mother's petition for rehearing, we modified the opinion to reject her arguments that (1) the formal exit order was not adjudicated in her prior appeal from the dependency decision, and (2) the exit order was void because it was not listed in the juvenile court's register of actions.  (*Ibid.*)  Our modified opinion observed that, in *In re J.L.*, *supra*, C089168, we granted mother's request to construe her notice of appeal as being taken from the formal exit order, "and we adjudicated and affirmed the order's validity." (*G.L. v. X.L.*, *supra*, C100782.)  The modified opinion held that res judicata barred mother's attempt to attack the exit order's validity except to the extent the order is void; and we concluded the order was not void for failure to appear on the juvenile court's register of actions because it was filed in the San Joaquin Superior Court and

---

[3] We deny father's request to take judicial notice of the originally issued opinion, which mother opposes on grounds that the opinion was unpublished and was not final at the time the request was made.  We further deny father's request that we judicially notice a letter from the California State Bar, as it has no bearing on our resolution of this appeal. (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 748, fn. 6 [denying judicial notice of materials not "necessary, helpful, or relevant"].)

judgment was entered that same date. (*Ibid.*) On December 17, 2025, after the conclusion of briefing in the present appeal, the California Supreme Court denied mother's petition for review of our decision. (*G.L. v. X.L.* (S293989) order denying review Dec. 17, 2025.) Thus, mother's broad objection to San Joaquin County's continuing jurisdiction over the custody case has been decided adversely to her, and we see no basis to revisit that decision here. (*People v. Stanley* (1995) 10 Cal.4th 764, 786 [law of the case]; *Williams v. Doctors Medical Center of Modesto, Inc.* (2024) 100 Cal.App.5th 1117, 1131 [issue preclusion].)[4]

Mother's final jurisdictional contention is that, by the time father filed his January 2025 vexatious litigant motion, the trial court had been divested of jurisdiction by virtue of mother's then-pending appeals from prior orders in the case. Specifically, mother argues that her then-pending appeal in case No. C100782 "placed the question of child custody jurisdiction—central to the vexatious litigant order—squarely before the appellate court"; and the vexatious litigant matter, which she claims was "grounded entirely in child custody jurisdiction since all matters involved child custody," should therefore have been automatically stayed under section 916.

---

[4] For these same reasons, and because the request is beyond the scope of our appellate authority, we deny mother's motion to approve or authorize the Judicial Council to investigate the records of the San Joaquin County Superior Court.

We likewise deny mother's requests for judicial notice of (1) various materials from surrounding proceedings and prior appeals, (2) her communications to the Sacramento County Superior Court and the Judicial Council, and (3) her notification that former San Joaquin County Counsel has since become a judge assigned to the San Joaquin County juvenile dependency court. All of the proffered materials relate to her arguments challenging the trial court's jurisdiction, and for reasons explained above, we reject these arguments without needing to resort to these materials. (*Jordache Enterprises, Inc v. Brobeck, Phleger & Harrison, supra*, 18 Cal.4th at p. 748, fn. 6 [denying judicial notice of materials not "necessary, helpful, or relevant"].) Mother's further requests that we vacate this court's prior ruling in *G.L. v. X.L., supra*, C100782, as well as all prior trial court orders in the present case are also denied.

9

As a general rule, " ' " '[t]he filing of a valid notice of appeal vests jurisdiction of the cause in the appellate court until determination of the appeal and issuance of the remittitur' [citation], thereby divesting the trial court of jurisdiction over anything affecting the judgment. [Citations.]" ' " (*Stubblefield v. Superior Court* (2025) 108 Cal.App.5th 675, 679-680.) "This rule prevents the trial court from rendering an appeal futile by conducting proceedings that may affect or alter the judgment on appeal." (*Id.* at p. 680.) Appellate jurisdiction does not, however, strip the trial court of all power to act. (*Ibid.*) Under section 916, the perfecting of an appeal generally " 'stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order, but the trial court may proceed upon any other matter embraced in the action and not affected by the judgment or order.' " (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 189, quoting § 916, subd. (a).) "The purpose of the automatic stay provision of section 916, subdivision (a) 'is to protect the appellate court's jurisdiction by preserving the status quo until the appeal is decided.' " (*Varian*, at p. 189.) " '[W]hether a matter is "embraced" in or "affected" by a judgment [or order] within the meaning of [section 916] depends on whether postjudgment [or postorder] proceedings on the matter would have any effect on the "effectiveness" of the appeal.' [Citation.] 'If so, the proceedings are stayed; if not, the proceedings are permitted.' " (*Ibid.*)

Mother presents, and we discern, no basis on which the designation of mother as a vexatious litigant and the entry of a prefiling order against her would have impaired the effectiveness of this court's jurisdiction to resolve the then-pending appeal in *G.L. v. X.L.*, *supra*, C100782, in which mother challenged various custody and visitation determinations, denials of requests for a DVRO, and orders rejecting her efforts to change venue, including on the ground that the trial court lacked jurisdiction to enter those orders. Accordingly, there was no violation of section 916, and the trial court properly exercised jurisdiction to decide the vexatious litigant motion.

10

## II.

Beyond her jurisdictional arguments, mother asserts a host of procedural challenges to the way in which the vexatious litigant prefiling order came about. We address only one of these procedural contentions, the denial of a disability accommodation for mother at the dispositive hearing, as we conclude that vacatur for a new hearing is required on that ground.

Mother contends that the trial court violated California Rules of Court, rule 1.100 as well as the ADA (42 U.S.C. § 12101 et seq.) by depriving her of necessary disability accommodations for the March 18, 2025 hearing on father's vexatious litigant motion, thereby effectively precluding her meaningful participation in the hearing.[5] "Rule 1.100 states and implements the policy of the California courts to 'ensure that persons with disabilities have equal and full access to the judicial system.' " (*Gropen v. Superior Court* (2023) 89 Cal.App.5th 1068, 1075, quoting rule 1.100(b); see rule 1.100(a)(1) [defining " 'persons with disabilities' "].) The rule establishes certain requirements for requesting accommodations, which are defined as "actions that result in court services, programs, or activities being readily accessible to and usable by persons with disabilities." (Rule 1.100(a)(3).) "Accommodations may include . . . furnishing, at no charge, to persons with disabilities, auxiliary aids and services, equipment, devices, materials in alternative formats, readers, or certified interpreters for persons who are deaf or hard-of-hearing." (*Ibid.*) Requests for an accommodation "must include a description of the accommodation sought, along with a statement of the medical condition that necessitates the accommodation." (Rule 1.100(c)(2).) Requests must be made "no fewer than 5 court days before the requested implementation date," although the court may waive this requirement. (Rule 1.100(c)(3).) Requests are to be forwarded to the court's ADA coordinator. (Rule 1.100(c)(1).)

---

[5] Undesignated rule references are to the California Rules of Court.

The rule also establishes a detailed procedure for ruling on requests for accommodations. In responding to a request for accommodation, a court "must consider, but is not limited by, California Civil Code section 51 et seq., the provisions of the Americans With Disabilities Act of 1990 (42 U.S.C. § 12101, et seq.), and other applicable state and federal laws." (Rule 1.100(e)(1).) A court may deny a request for accommodation "only when" it determines that: (1) the applicant fails to satisfy the requirements of the rule; (2) the requested accommodation "would create an undue financial or administrative burden on the court"; or (3) the requested accommodation "would fundamentally alter the nature of the service, program, or activity." (Rule 1.100(f)(1)-(3).) The response to an applicant's request must indicate "[w]hether the request for accommodation is granted or denied, in whole or in part, or an alternative accommodation is granted"; the reason for any denial; the nature and duration of any accommodation to be provided; and, if the response is in writing, the date the response was delivered or sent to the applicant. (Rule 1.100(e)(2).) "If the accommodation request is denied in whole or in part, the response must be in writing." (*Ibid.*) "The accommodation by the court must be provided for the duration indicated in the response to the request for accommodation and must remain in effect for the period specified. The court may provide an accommodation for an indefinite period of time, for a limited period of time, or for a particular matter or appearance." (Rule 1.100(h).)

We review claims of rule 1.100 violations for abuse of discretion. (*Friends of South Fork Gualala v. Department of Forestry & Fire Protection* (2024) 106 Cal.App.5th 1180, 1195.) We review the trial court's findings of fact for substantial evidence and its conclusions of law de novo; its application of the law to the facts is reversible only if arbitrary and capricious. (*Ibid.*)

In this case, five court days before the vexatious litigant hearing, mother requested accommodations, including a hearing aid and a Mandarin sign language interpreter, to assist with her hearing loss. (Rule 1.100(c)(3) [requests must be made no fewer than five

12

court days in advance]; rule 1.100(a)(3) [accommodations may include auxiliary aids, equipment, devices, or certified interpreters].)  She asked that these accommodations be provided "permanently."  Although the trial court commissioner partially denied mother's request, the commissioner *granted* accommodations in the form of a "Mandarin interpreter and a hearing device."  The commissioner did not specify a duration for these accommodations, but it is clear from the record that they were to be provided at least for the next scheduled court hearing, the March 18, 2025 hearing on the vexatious litigant motion.  Indeed, during that hearing, the trial court acknowledged that "there were certain accommodations made" for mother and "that she was granted an accommodation."  Yet, the court did not provide the promised accommodations during the hearing.

The trial court observed that mother was appearing by telephone (at least initially) and that the promised "accommodations cannot be made over the phone."  The court thus acknowledged it was "unable to meet the accommodations that were made for her."  Faced with that reality, the court initially intended to grant a continuance to allow for the accommodations to be provided.  Ultimately, however, the court proceeded with the hearing, noting that mother was "not here to request [a continuance]," leaving her wishes unclear.  We are unable to conclude this was an adequate basis for proceeding with the hearing.  No accommodations were provided to allow mother to attend that hearing (at which the court expected her to clarify her request for a continuance); and just the day before, she had specifically asked to continue the hearing due to her inability to hear without special accommodations.

We recognize the trial court's legitimate desire to avoid delay, particularly in light of a record replete with filings that have impeded the efficient resolution of the parties' custody dispute.  But the trial court had already concluded that mother was a person with a disability and was entitled to an accommodation to participate in future hearings.  Having been *granted* that accommodation as of March 14, 2025, mother was entitled under rule 1.100 to be accommodated at upcoming hearings, including the March 18

13

vexatious litigant hearing. Under rule 1.100(h), a granted accommodation "must be provided for the duration indicated in the response to the request for accommodation and must remain in effect for the period specified." Even in the absence of a specified duration, as here, it would be inconsistent with the policy of rule 1.100 to permit an accommodation to be granted but then simply not provided at the hearing for which it was intended. On the facts here, the trial court's refusal to continue the hearing to a date when mother could appear in such a way that the promised accommodations could be provided amounted to a constructive denial of those accommodations without basis in the authorized grounds in rule 1.100(f).

Father argues, without citation, that mother has not shown how she was prejudiced by any error in the way in which the trial court handled mother's request for disability accommodations. But wrongful denial of an accommodation is structural error, reversible per se, at least where the denial implicates access to justice concerns. (*Biscaro v. Stern* (2010) 181 Cal.App.4th 702, 705, 707-710.) That is because the failure to provide an accommodation "infect[s] a legal proceeding's reliability" in that "an accommodation's purpose is to help a party meaningfully participate in a way that enhances our confidence in a proceeding's outcome." (*Id.* at p. 710; see also *id.* at pp. 705, 707-710 [reversing as structural error entry of restraining order against disabled litigant who was absent from hearing due to failure to rule on his accommodation request]; *In re Marriage of James & Christine C.* (2008) 158 Cal.App.4th 1261, 1270-1272, 1275 [reversing judgment of dissolution entered following trial in disabled pro per litigant's absence, without conducting prejudice analysis]; cf. *Friends of South Fork Gualala v. Department of Forestry & Fire Protection*, *supra*, 106 Cal.App.5th at pp. 1202-1203 [affirming denial of continuance for trial counsel's disabling medical condition after conducting prejudice analysis because "[t]here was no denial of access to judicial services" and appellant's complaints did not compare to the "procedural deprivations" involved in *Biscaro* and *Marriage of James*].)

14

The circumstances of mother's constructive denial of accommodations here implicate sufficient access to justice concerns to qualify as structural error. Like the appellant in *In re Marriage of James & Christine C.*, *supra*, 158 Cal.App.4th at pages 1264 and 1274, mother was a self-represented party who experienced a significant adverse outcome following a hearing at which she had been incorrectly denied an accommodation. Although the hearing did not finally dispose of the custody case, it did result in a broad curtailment of mother's right to file any new litigation in the courts of California. (See § 391.7, subd. (a).) Given the trial court's conclusion that mother was entitled to an accommodation to participate in the hearing at which that right would be decided, the failure to provide the accommodation was reversible error, regardless of whether mother likely would have obtained a better outcome with the promised accommodation. (See *Biscaro v. Stern*, *supra*, 181 Cal.App.4th at p. 710.)

## DISPOSITION

The trial court's prefiling order is vacated, and the case is remanded for a new hearing on respondent's vexatious litigant motion that complies with rule 1.100. The parties shall bear their own costs on appeal.


/s/
FEINBERG, J.

We concur:


/s/
EARL, P. J.


/s/
HULL, J.